UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, O'Brien and Senior Judge Frank
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 1720-19-1              JUDGE ROBERT P. FRANK
                                                  APRIL 14, 2020

MIQUEL SIRMIR JOHNSTON


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Mason D. Williams, Assistant Attorney General (Mark R. Herring,
Attorney General; Timothy J. Huffstutter, Assistant Attorney
General, on brief), for appellant.

Joseph E. Dean, II (W. Edward Riley, IV; Riley & Wells, on brief),
for appellee.


The Commonwealth, under Code § 19.2-398(B), contends that the trial court abused its

discretion by setting a $10,000 pre-trial bond for Miquel S. Johnston.  For the reasons stated, we

affirm the trial court's decision.

BACKGROUND

In September 2018, Johnston was indicted on charges of second-degree murder, use of a

firearm in the commission of a felony, shooting into an occupied dwelling, and assault and

battery of a family or household member.  In November 2018, the trial court denied Johnston's

motion to be admitted to bail.  Johnston's first trial resulted in a hung jury and a mistrial in

February 2019.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On September 26, 2019—the day scheduled for retrial—the Commonwealth moved for a continuance because its primary witness was in "a high-risk pregnancy," and her doctors were concerned about complications that might arise from the stress of testifying. Over Johnston's objection, the trial court continued the case until after the witness' expected due date.

Johnston then moved for bond. Before hearing evidence or argument, the trial court recounted the case's procedural history and commented that Johnston was "renewing his motion with the same reasons that he presented" in November 2018. The trial court also stated, "this continuance of roughly four months going forward from today is another issue for the Court to consider."

Johnston proffered, without objection, that many of his family and friends were in the courtroom and had been "supportive of him through this whole ordeal." Johnston had "lived in [the] area his whole life" and had "never been anywhere else." He proffered that his job at an automobile repair facility "may still be available," but if it was not, he could live with his uncle, who could "put [Johnston] to work with him" doing home renovation. Johnston claimed that he had "never been in trouble" and had no criminal history save a reckless driving conviction. Following that proffer, the trial court questioned Johnston about the exact locations of the automobile repair facility and his uncle's residence.

Johnston did not deny that he had shot and killed the victim but maintained that he had acted in self-defense. He proffered that a juror from the first trial had called his counsel's office, identified herself by name, and stated that the jury had hung eleven to one in favor of acquitting Johnston. Johnston asked the trial court to grant a reasonable bond but conceded that some conditions could apply, such as GPS monitoring. The trial court asked what a reasonable bond would be, and Johnston responded "$10,000 or so."

The Commonwealth proffered, without objection, that Johnston had assaulted the witness—the one then undergoing a high-risk pregnancy—by punching her in the face and grabbing her throat. The witness called her parents and left the house, but she did not tell her parents what had happened. When she returned, Johnston again assaulted her, so she called her parents and again asked them to come get her. When her father arrived, she told him that Johnston had assaulted her. The father walked to the bedroom where Johnston was, knocked on the door, and asked to speak with him. Johnston, who was waiting with a gun, shot at the father two or three times; one bullet struck the father in the chest and killed him.

The Commonwealth further proffered that a juror from the first trial had informed its office that the jury had hung eleven to one in favor of conviction, not acquittal. The Commonwealth stated that one juror "would not convict because she felt like [Johnston] had a right to have a gun and to defend himself in his own home." The Commonwealth also maintained that Johnston had "a misdemeanor adjudication from 2013 for violation of [a] protective order." The Commonwealth concluded that Johnston was "a danger to the community at large and . . . a danger to" the witness he had assaulted. Accordingly, it asked the trial court to deny Johnston's motion for bond.

Johnston contested the Commonwealth's version of the evidence, proffering that he and the witness had been "bickering" all morning. Johnston heard the witness tell her father that Johnston had been "beating" her. The witness previously had told Johnston that her father had a gun, and Johnston was "scared" because he had seen the father "do some bad stuff." Johnston claimed that the father "busted in the door" to Johnston's bedroom "with [the] intent to do harm." Johnston fired two shots to stop the father's advance. Johnston called 9-1-1 when he saw blood on the floor. Johnston recognized the presumption against bond but argued that there was "an element of fairness and due pro[c]ess."

Following the proffers of evidence and argument by counsel, the trial court confirmed that the first trial consisted of four fact witnesses, including Johnston. The trial court also reviewed Johnston's "pretrial sheet" and concluded that Johnston had been convicted of "violating [a] court order," not necessarily a protective order, which "could be lots of things." The court then ruled:

> It would be helpful for me to know which way the eleven to one goes, but that's not the way this works. In this case I think the presumption for no bond has been overcome from what I heard today, in fact, my recollection of what I heard back in November of last year. I'm going to establish a bond, the circumstances of bond that I think will protect the public and in particular[] protect the complaining witness in this case. And I note the [C]ommonwealth's exception to this ruling.

The trial court established a $10,000 secured bond, conditioned on pretrial supervision and GPS monitoring. The court also ordered that appellant could only leave his uncle's residence to work or to meet his attorney. The Commonwealth appeals under Code § 19.2-398(B).[1]

ANALYSIS

The Commonwealth contends that the trial court erred by finding that Johnston had rebutted the presumption against bail. In its sole assignment of error, the Commonwealth argues that the court abused its discretion "by (1) taking into account the passage of time as a change in circumstances and giving it significant weight, and (2) reaching an erroneous legal conclusion by failing to state how the presumption against bail had been overcome."[2]

---

[1] "A petition for appeal may be taken by the Commonwealth in a felony case from any order of release on conditions pursuant to Article 1 (§ 19.2-119 et seq.) of Chapter 9 of this title." Code § 19.2-398(B).

[2] In its opening brief, the Commonwealth also argues that the trial court abused its discretion by failing to "consider the danger to the pregnant witness posed by Johnston's release, a relevant factor." That argument, however, exceeds the scope of the Commonwealth's narrow assignment of error. We are "limited to reviewing the assignments of error presented by the litigant." Banks v. Commonwealth, 67 Va. App. 273, 289-90 (2017); see also Rule 5A:12(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be

"This Court reviews a trial court's decision whether to grant bail for abuse of discretion." Commonwealth v. Duse, 295 Va. 1, 7 (2018) (citing Fisher v. Commonwealth, 236 Va. 403, 411 (1988)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because the reviewing court would have come to a [different] result in the first instance." Id. (quoting Lawlor v. Commonwealth, 285 Va. 187, 212 (2013)).

> This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts – yet still remain entirely reasonable. This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.

Thomas v. Commonwealth, 62 Va. App. 104, 111-12 (2013) (quoting Hamad v. Hamad, 61 Va. App. 593, 607 (2013)). The Supreme Court has identified three ways in which a trial court abuses its discretion: when (1) it fails to consider a relevant factor that should have been given significant weight, (2) it considers and gives significant weight to an irrelevant or improper factor, or (3) it considers all proper factors, and no improper ones, but, in weighing those factors, the court commits a clear error in judgment. Lawlor, 285 Va. at 213 (citing Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352 (2011)).

"A person who is held in custody pending trial . . . shall be admitted to bail . . . unless there is probable cause to believe" that "[h]e will not appear for trial" or "[h]is liberty will constitute an unreasonable danger to himself or the public." Code § 19.2-120(A). The trial court, however, "shall presume, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the [defendant] or the safety of the public if [he] is currently charged with . . . [a]n act of violence as defined in § 19.2-297.1." Code

---

noticed by this Court."). Consequently, we do not consider issues touched upon in the Commonwealth's argument but not encompassed by its assignment of error.

§ 19.2-120(B)(1).  Here, appellant is charged with such an "act of violence"—second degree murder—thus, the rebuttable presumption against bail applies.  See Code §§ 19.2-297.1 and 18.2-32.

In determining whether that presumption is rebutted, the trial court

> shall consider the following factors and such others as it deems appropriate in determining . . . whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of the public:
>
> 1.  The nature and circumstances of the offense charged;
>
> 2.  The history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, membership in a criminal street gang as defined in § 18.2-46.1, and record concerning appearance at court proceedings; and
>
> 3.  The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Code § 19.2-120(E).

The Commonwealth first argues that the trial court abused its discretion by concluding that Johnston had rebutted the presumption against bail because the court "did not articulate a basis for its decision."  "There is no general requirement that trial courts must state for the record the reasons underlying their decisions."  Shannon v. Commonwealth, 289 Va. 203, 206 (2015).  Nevertheless,

> in light of the public policy underlying laws providing for prompt and meaningful review of bail decisions, a court making such a decision has a duty to articulate the basis of its ruling sufficiently to enable a reviewing court to make an objective determination that the court below has not abused its discretion.

Id.  The duty to articulate the basis for the bail decision attaches, the Supreme Court explained, because the

important public policy underlying that appellate framework would be entirely nullified if the courts called upon to review bail decisions were bound to find no abuse of discretion where the court making the decision had merely rested its ruling on the "circumstances of the case" or some similar conclusory and uninformative formula.

Id. If such were the case, "all appeals from bail decisions so expressed would be futile." Id.

In Shannon, the defendant, a registered sex offender, was charged with abduction with the intent to defile, sodomy, and attempted sodomy. Id. at 203-05. The only explanation that the circuit court gave for granting bail to the defendant was: "Under the circumstances of this case[,] bond will be set at $60,000 cash or corporate surety." Id. at 206. This Court reversed, holding that the circuit court failed to consider a relevant factor that should have been given substantial weight—the defendant's status as a registered sex offender. Id. at 207.

On appeal, the Supreme Court held that

> [i]t was impossible for the Court of Appeals to determine from the circuit court's [conclusory and uninformative] ruling what, if any, consideration or weight the circuit court might have given to the statutory presumption against bail, the effect of [the defendant's] presence on the sex offender registry, and his pending charges involving a repeat sexual offense involving violence.

Id. Consequently, the Supreme Court ruled that this Court "was *required* to look at the record made in the circuit court to ascertain whether the conclusion the circuit court reached had factual support." Id. (emphasis added). The Supreme Court held that it could not, "on [that] record, find that [this Court] erred." Id. Accordingly, it affirmed this Court's decision.[3] Id.

---

[3] On appeal to the Supreme Court, the defendant's assignment of error alleged that this Court had "erred by 'misapplying the standard of review and finding the rebuttable presumption against bail had not been rebutted based on the record.'" Shannon, 289 Va. at 203-04. The Supreme Court, however, explicitly did not "make an independent determination whether the circuit court abused its discretion in admitting [the defendant] to bail." Id. at 204. It observed that while Rule 5A:2(b) provides that this Court reviews an order setting or denying bail "for abuse of discretion," "[t]here is no corresponding rule regarding review of a bail decision in [the Supreme Court]." Id. at 204 n.1. Instead, the Supreme Court considered *de novo* "whether the

Here, when providing its ruling, the trial court merely stated that the "presumption for no bond ha[d] been overcome from what I heard today, in fact, my recollection of what I heard back in November of last year." That statement is conclusory, uninformative, and the functional equivalent of stating that the presumption against bond had been overcome because of the "circumstances of [the] case," which the Supreme Court concluded was insufficient in Shannon. Thus, we hold that the trial court did not "articulate the basis of its ruling sufficiently to enable [this Court] to make an objective determination that [it] ha[d] not abused its discretion." Shannon, 289 Va. at 206.

That conclusion, however, does not end our analysis. As explained in Shannon, we are now "*required* to look at the record made in the [trial] court to ascertain whether the conclusion the [trial] court reached had factual support." Id. at 207 (emphasis added); see also Duse, 295 Va. at 7-9 (considering the entire record under an abuse of discretion standard in a pre-trial bail appeal three years after the decision in Shannon was issued). In this case, the trial court's statements and questions made throughout the bond hearing and when it rendered its decision, demonstrate that the court's decision represented a proper exercise of discretion, based on the facts presented to it and guided by the factors enumerated in Code § 19.2-120(E).

First, the parties proffered their competing versions of the "nature and circumstances of the offense[s] charged." Code § 19.2-120(E)(1). They agreed that Johnston had shot the victim, but appellant maintained that he had acted in self-defense, and the Commonwealth contended that the shooting was malicious. The trial court followed these proffers with specific questions regarding the number of fact witnesses at the first trial and the nature of each side's evidence. Those questions confirmed that the trial court properly considered the nature and circumstances

---

Court of Appeals erred it its appellate review" by "misapply[ing] the Rules of Court." Id. (citing LaCava v. Commonwealth, 283 Va. 465, 470 (2012)).

of the charged offenses in its analysis of whether Johnston had rebutted the presumption against bond. Id. Additionally, the court's questions revealed that the issue at the trial hinged on a credibility determination, which the jury had been unable to make. See Code § 19.2-121 (directing a "judicial officer" to consider the "weight of the evidence" when setting the terms of bail).

Additional questions from the bench revealed that the trial court thoroughly considered facts regarding Johnston's "family ties, employment, . . . length of residence in the community, community ties, . . . [and] criminal history." Code § 19.2-120(E)(2). Specifically, Johnston proffered that he had family and friends who were in the courtroom at the hearing and had supported him throughout the extended proceedings. Johnston was a life-long resident of the area and had "never been anywhere else." Moreover, Johnston's uncle guaranteed that Johnston would have both a place to live and a job. After Johnston's proffer of those facts, the trial court questioned Johnston about the exact locations of his place of employment and his uncle's residence. The court then ordered, as a condition of Johnston's release, that he live at his uncle's residence and not leave except to go to work or meet his attorney. Additionally, although the Commonwealth argued that Johnston had been convicted of violating a protective order in 2013, the trial court found that, according to Johnston's "pretrial sheet," appellant had been convicted only of "violating [a] court order," which "could be lots of things." Other than that vague notation and a reckless driving conviction, Johnston had "never been in trouble."

Finally, the record reveals that the trial court considered the "nature and seriousness of the danger to any person or the community that would be posed by [Johnston's] release." Code § 19.2-120(E)(3). The court stated, "I'm going to establish a bond, the circumstances of bond that I think will *protect the public* and in particular[] *protect the complaining witness* in this

case." (Emphases added). The court conditioned Johnston's release on pretrial supervision, GPS monitoring, and limiting his ability to leave his uncle's residence.

Accordingly, after reviewing "the record made in the [trial] court," we hold that the trial court's ruling that Johnston had rebutted the presumption against bond had significant "factual support" and was made after the court thoroughly considered the factors enumerated in Code § 19.2-120(E). The trial court acted within the "bell-shaped curve" of reasonable decisions it could reach in determining "where the equities lie." Thomas, 62 Va. App. at 111. Accordingly, we will not disturb that decision on appeal.

Next, the Commonwealth argues that the trial court abused its discretion by considering the "continuance of roughly four months going forward from today" as a factor in its bail decision. The Commonwealth suggests that a trial court cannot consider the "passage of time" because "[i]t is not one of the factors a court *may* consider in Code § 19.2-120(E)." (Emphasis added). We disagree.

By its express terms, Code § 19.2-120(E) does not provide an exhaustive list of factors that a court "may" consider when determining whether a defendant has rebutted the presumption against bail. Rather, it provides a list of factors that the court "shall consider" along with "*such other[ factors] as [the court] deems appropriate*." Code § 19.2-120(E) (emphasis added). Trial courts are afforded great latitude and "discretion with regard to the allowance of bail" and should "consider the circumstances *of the particular case*" in addition to "pertinent constitutional and statutory provisions." 8 C.J.S. Bail § 32 (emphasis added). Indeed, the Supreme Court in Shannon affirmed that the circuit court should have considered the defendant's status as a registered sex offender, even though a defendant's sex offender status is not explicitly listed in Code § 19.2-120(E).

Nevertheless, the Commonwealth relies on United States v. Kin-Hong, 83 F.3d 523, 525 (1996), wherein the First Circuit Court of Appeals held that the "normal passage of time inherent in the litigation process [does not] constitute[] a 'special circumstance'" justifying bail. That reliance is misplaced. In Kin-Hong, the court reviewed a grant of a petition for a writ of habeas corpus "releasing [the prisoner] on bail pending a decision on his extraditability to Hong Kong." Id. at 523-24. The court observed that there was a presumption against bail in extradition cases and only "special circumstances" justify release on bail. Id. at 524 (citing Wright v. Henkel, 190 U.S. 40, 63 (1903)). While the court concluded that the "normal passage of time" was insufficient to overcome the presumption against bail, it also held that the prisoner could "renew his bail request" if "*unusual delays* transpire[d]." Id. at 525 (emphasis added).[4] Thus, rather than demonstrating that a court may never consider the passage of time in a bail determination, Kin-Hong supports our conclusion that such a consideration is apt under appropriate circumstances.

Here, appellant was indicted on the present charges in September 2018. His first trial ended with a hung jury, and, on the date of the retrial, in September 2019, the trial court continued the case for several more months on the *Commonwealth*'s motion. Under those circumstances, we conclude that the trial court did not abuse its discretion by considering the passage of time as a factor in its decision. See Territory v. McFarlane, 1 Mart. (o.s.) 216, 217 (Orleans 1811) ("In case of a mistrial or of a continuance, *at the instance of the territory*, as the

---

[4] As an example of an unusual delay, the court cited a case where "the [government] [was] not ready to proceed." Kin-Hong, 83 F.3d at 524 (citing United States ex rel. McNamara v. Henkel, 46 F.2d 84, 84 (S.D.N.Y. 1912)).

confinement may be extended to a considerable length, there would no impropriety in listening

to a motion for bail." (emphasis added)).[5]

CONCLUSION

For the foregoing reasons, we conclude that the trial court did not abuse its discretion by

setting a $10,000 pre-trial bond for Miquel S. Johnston.

<u>Affirmed.</u>

---

[5] The Commonwealth also argues that the trial court abused its discretion by "consider[ing] fairness to the detainee and due process, which are improper factors and not found in Code § 19.2-120(E)." Again, that argument exceeds the scope of the Commonwealth's narrow assignment of error. Accordingly, we do not consider it. See Banks, 67 Va. App. at 289-90.