COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Decker, AtLee and Malveaux
Argued at Richmond, Virginia


ALFRED BANKS, JR.

OPINION BY
v.        Record No. 2055-15-2        JUDGE MARLA GRAFF DECKER
FEBRUARY 14, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Catherine French, Senior Appellate Coordinator (Dorian Dalton,
Senior Assistant Public Defender, on briefs), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Alfred Banks, Jr., appeals his conviction for stalking, in violation of Code § 18.2-60.3.

He argues that the trial court erred by refusing his proposed jury instructions and in admitting

evidence of prior contacts. Further, the appellant contends that the evidence was insufficient to

support his conviction because it did not prove that more than one contact occurred during the

timeframe alleged in the warrant or that a reasonable person in the victim's position would have

experienced fear of death, criminal sexual assault, or bodily injury. For the reasons that follow,

we affirm the conviction.

## I. BACKGROUND

The appellant's conviction is based on his contacts with D.B., a medical doctor. In 1990,

the appellant met D.B. in Richmond, Virginia, at the medical clinic where she was an intern and

he was an aide. D.B. described their contact as "cordial." They were not friends and did not

socialize outside of work. D.B. did not give the appellant her personal contact information, such as her address or phone number.

After D.B. graduated from medical school in 1990, she moved from Richmond and started her medical residency in Newport News, Virginia. The appellant sent D.B. unsolicited letters at her place of employment in Newport News. In those letters, the appellant wrote that he wanted to move to Newport News and marry her because "he felt like [they] were supposed to be together forever." He also persistently telephoned her at work and at home. D.B. told the appellant that she was not interested in having a relationship with him and wanted him to stop calling her. However, the appellant did not stop until D.B. moved to Washington, D.C., where she lived from 1992 to 1995. During that time, the appellant did not contact her.

D.B. moved back to Richmond in 1995. For the following year, she again received unsolicited letters from the appellant. The letters were left at the front desk of the clinic where she worked. In the letters, the appellant stated that he cared for D.B. and still wanted to "be [her] boyfriend." In one letter, he said that "he was never going to stop trying to talk" to her, which D.B. found "disturbing." During that same time period, the appellant also showed up in the clinic's parking lot at least three times. He asked D.B. why she would not talk to him. According to D.B., the appellant "just started getting more and more sort of aggressive in his tone," which caused her to feel "scared" and "intimidated." D.B. was worried that the appellant "might try to hit [her] or do something violent." She contacted the Chesterfield County and Virginia Commonwealth University (VCU) police departments. D.B. spoke with Lieutenant Carlton Edwards with the VCU police. Edwards contacted the appellant and told him to leave D.B. alone.

For a "few years" after the contacts that occurred from 1995 to 1996, D.B. did not see or hear from the appellant. In 1998 or 1999, the appellant visited her workplace parking lot again.

He approached D.B. as she was getting into her car. He grabbed her car door and yelled, "Why won't you talk to me?" The appellant left only after two nurses who were passing by asked D.B. if she was okay. D.B. contacted Lieutenant Edwards again to address the problem. Edwards spoke with the appellant, and the appellant agreed that he would not have any further contact with D.B.

In 2014, however, the appellant contacted D.B. again despite his representation to Edwards. At that time, he repeated his behavior of approaching her in her workplace parking lot. Although she did not recognize him at first, D.B. "didn't feel good about" the man. She told him to go inside the building, where there was a security guard, and that she would talk to him inside. The man ignored her and asked, "Can you be my doctor?" D.B. asked him his name. When he identified himself as Alfred Banks, D.B. recognized him. She said that she could not be his doctor and told him to leave. Despite D.B.'s responses, the appellant remained and repeatedly asked her to be his doctor. D.B. went into the building as the security guard went outside. The appellant left before the guard had the chance to speak with him. According to the security guard, D.B. was upset and said "he['s] back, he found me."

The jury found the appellant guilty of misdemeanor stalking. In accordance with the recommendation of the jury, the court sentenced him to twelve months in jail, with six months suspended.

## II. ANALYSIS

The appellant argues that the trial court erred by denying his proposed jury instructions on prior offense evidence. He also contends that the trial court erred in admitting evidence of prior contacts during the 1990s as proof that he "engaged in conduct directed at [D.B.] on more than one occasion under the first element" of the stalking statute. Additionally, the appellant argues that the evidence was insufficient to support his conviction because the Commonwealth

- 3 -

did not prove that he "engaged in conduct directed" at the victim "on more than one occasion during April of 2014" as was alleged in the warrant. Finally, he contends that the evidence was insufficient to support his conviction because the Commonwealth failed to prove that his conduct placed D.B. in reasonable fear of death, criminal sexual assault, or bodily injury.

## A. Jury Instructions and Scope of Evidence

The appellant argues that the trial court erred by refusing his proposed jury instructions limiting consideration of the evidence of his previous contacts with D.B. and allowing the jury to consider them as evidence of the "on more than one occasion" element of stalking. The Commonwealth responds that the appellant's proffered instructions would improperly have prevented the jury from considering whether those contacts established an element of the offense for which he was on trial.

In proposing possible jury instructions, the appellant first suggested that the jury be instructed that it "may consider evidence of [d]efendant's prior contacts with [D.B.], specifically contact which occurred prior to the dates of the alleged offense, only as evidence of the defendant's intent in connection with the offense for which he is on trial and for no other purpose." Alternatively, the appellant offered an instruction limiting consideration of the testimony about prior conduct for purposes of establishing intent, motive, and factors other than the element of "on more than one occasion." The court refused both instructions based on its ruling that the evidence of the appellant's prior contacts with D.B. could be considered for purposes of establishing any element of the offense.

The appellant argues that it was error for the trial court to refuse to give either of these instructions to the jury. He reasons that consideration of the evidence of his prior contacts with D.B. that occurred earlier than the preceding year violated the one-year statute of limitations for the stalking charge. See Code §§ 18.2-60.3, 19.2-8.

- 4 -

The decision regarding granting or denying a jury instruction generally rests "in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009). However, whether an instruction "accurately states the relevant law is a question of law" that the appellate court reviews *de novo*. Sarafin v. Commonwealth, 288 Va. 320, 325, 764 S.E.2d 71, 74 (2014) (quoting Lawlor v. Commonwealth, 285 Va. 187, 228, 738 S.E.2d 847, 870 (2013)). This Court's "sole responsibility in reviewing" the trial court's decision "is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Cooper, 277 Va. at 381, 673 S.E.2d at 187 (quoting Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006)).

This assignment of error requires interpretation of Code § 18.2-60.3. We apply *de novo* review to purely legal questions of statutory interpretation. L.F. v. Breit, 285 Va. 163, 176, 736 S.E.2d 711, 718 (2013); see also Taylor v. Commonwealth, 64 Va. App. 282, 285, 767 S.E.2d 721, 723 (2015) (noting that whether a claim is barred by the statute of limitations is a question of law). Further, under accepted principles of statutory construction, we look to the plain meaning of the words contained in a statute to determine the General Assembly's intent. Elliott v. Commonwealth, 277 Va. 457, 463, 675 S.E.2d 178, 182 (2009). "If the language is clear and unambiguous, we will assign the statute its plain meaning." Browning-Ferris Indus. of S. Atl. v. Residents Involved in Saving the Env't, Inc., 254 Va. 278, 284, 492 S.E.2d 431, 435 (1997). Consistent with this standard, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (alteration in original) (quoting Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)). Additionally, this Court must "give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Conyers v. Martial Arts

- 5 -

World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007).  When statutory language is subject to more than one interpretation, "we must apply the interpretation that will carry out the legislative intent behind the statute."  Id.  Separate "statutes must be read 'as a consistent and harmonious whole to give effect to the overall statutory scheme.'"  L.F., 285 Va. at 178, 736 S.E.2d at 719 (quoting Bowman v. Concepcion, 283 Va. 552, 563, 722 S.E.2d 260, 266 (2012)).

Stalking is defined in pertinent part as when a person "on more than one occasion engages in conduct directed at another person with the intent to place, or when he knows or reasonably should know that the conduct places[,] that other person in reasonable fear of death, criminal sexual assault, or bodily injury."  Code § 18.2-60.3.  The Supreme Court has explained that the crime comprises three elements:

> (1) the defendant directed his . . . conduct toward the victim on at least two occasions; (2) the defendant intended to cause fear or knew or should have known that his . . . conduct would cause fear; and (3) the defendant's conduct caused the victim "to experience reasonable fear of death, criminal sexual assault, or bodily injury."

Stephens v. Rose, 288 Va. 150, 155, 762 S.E.2d 758, 761 (2014) (quoting Parker v. Commonwealth, 24 Va. App. 681, 685, 485 S.E.2d 150, 152 (1997)).  Notably, the plain language in Code § 18.2-60.3 does not place any limitation on when prohibited conduct must have occurred.  See Johnson v. Commonwealth, 58 Va. App. 625, 641, 712 S.E.2d 751, 759 (2011) ("We can only administer the law as it is written." (quoting Uninsured Emplrs. Fund v. Wilson, 46 Va. App. 500, 506, 619 S.E.2d 476, 479 (2005))).

First-offense stalking is a Class 1 misdemeanor.  Code § 18.2-60.3.  Consequently, a prosecution for stalking "shall be commenced within one year next after there was cause therefor."  Code § 19.2-8.  "[T]he issuance of a warrant commences a prosecution" for statute of

limitations purposes.  Taylor, 64 Va. App. at 286, 767 S.E.2d at 723 (quoting Hall v.

Commonwealth, 2 Va. App. 159, 162, 342 S.E.2d 640, 641 (1986)).

A statute of limitations protects "against stale prosecutions."  Sandoval v.

Commonwealth, 64 Va. App. 398, 409, 768 S.E.2d 709, 715 (2015).

> The purpose of a statute of limitations is to limit exposure to
> criminal prosecution to a certain fixed period of time following the
> occurrence of those acts the legislature has decided to punish by
> criminal sanctions.  Such a limitation is designed to protect
> individuals from having to defend themselves against charges
> when the basic facts may have become obscured by the passage of
> time and to minimize the danger of official punishment because of
> acts in the far-distant past.  Such a time limit may also have the
> salutary effect of encouraging law enforcement officials promptly
> to investigate suspected criminal activity.

Toussie v. United States, 397 U.S. 112, 114-15 (1970), superseded by statute on other grounds,

50 U.S.C. § 462(d), as recognized in United States v. Kerley, 838 F.2d 932, 935 (7th Cir. 1988).

A "statute[] of limitations normally begin[s] to run when the crime is complete."

Toussie, 397 U.S. at 115 (quoting Pendergast v. United States, 317 U.S. 412, 418 (1943))

(recognizing the exception to this general principle for continuing offenses); see also United

States v. Perry, 757 F.3d 166, 173 (4th Cir. 2014), cert. denied, 135 S. Ct. 1000 (2015).  An

offense is "complete when the defendant has completed all of the elements of the crime."  See

Rowland v. Commonwealth, 281 Va. 396, 399, 707 S.E.2d 331, 333 (2011).

In this case, appellant completed the elements of the stalking in April 2014.  Appellant's

contact with D.B. at that time constituted an "occasion" of the "on more than one occasion"

element of Code § 18.2-60.3.  The length of the time that elapsed between contacts did not as a

matter of law prevent completion of the offense in 2014.  See Raja v. Commonwealth, 40

Va. App. 710, 721, 581 S.E.2d 237, 242 (2003) (noting that stalking, "by its very nature,

involves multiple instances of conduct, taking place on 'expansive dates'"[1]).  Rather, the chronology was a circumstance for the trier of fact to consider in determining whether the Commonwealth proved the other elements of the offense:  (1) whether the appellant "intended to cause fear or knew or should have known that his . . . conduct would cause fear," and (2) whether the appellant's "conduct caused the victim 'to experience reasonable fear of death, criminal sexual assault, or bodily injury.'"  See Stephens, 288 Va. at 155, 762 S.E.2d at 761 (quoting Parker, 24 Va. App. at 685, 485 S.E.2d at 152).  Consequently, the statute of limitations began to run in April 2014 when the offense was complete.

The appellant further argues on appeal that the stalking that occurred in the 1990s was a separate offense from any offense committed in 2014.  However, he did not raise this specific argument in the trial court.

Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Interpreting Rule 5A:18, this Court has held that "[a] general argument or an abstract reference to the law is not sufficient to preserve an issue."  Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004).  In addition, "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review."  Id.; see Copeland v. Commonwealth, 42 Va. App. 424, 441, 592 S.E.2d 391, 399 (2004).  The purpose of the rule requiring an adequately articulated objection is to allow both the trial court and the opposing party "the opportunity to intelligently address, examine, and resolve issues in the trial court" in order to avoid unnecessary

---

[1] "Expansive" is defined as "having considerable extent:  broad" and is "characterized by largeness . . . of scale."  Webster's Third New International Dictionary 798 (2002).

appeals and retrials. See Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004).

The appellant never argued to the trial court that any stalking that occurred in the 1990s was a separate offense from any 2014 stalking, as opposed to a single offense. This is the case even though the prosecutor argued that the "gravamen of the statute" was "to prevent someone from continuously harassing a person where they feel that they are in reasonable fear." Instead, the appellant argued that evidence of the earlier contacts was not probative of whether he stalked D.B. during the April 2014 time period alleged in the warrant. Alternatively, he argued that the evidence of the contacts occurring before April 2014 was relevant only to motive, scheme, or plan, and not to an element of the offense. Although the appellant did argue at one point that "there [was] not continuous contact between the defendant and the alleged victim," he did so only in response to the trial court's observation that his previous interactions with D.B. tended to show that he knew or should have known that his presence caused her fear.

The appellant's failure to make the "separate offense" argument below deprived the Commonwealth of the chance to address it and the trial court of the opportunity to make a ruling on this legal issue. See Taylor, 64 Va. App. at 291 n.7, 767 S.E.2d at 726 n.7. At no point has the appellant asserted that the ends of justice exception to Rule 5A:18 applies to permit this Court to consider the separate offense challenge, and we decline to consider that limited exception *sua sponte*. See Edwards, 41 Va. App. at 761, 589 S.E.2d at 448. In addition, the appellant does not raise the "good cause" exception to Rule 5A:18, and a review of the record does not provide any reason to invoke it. See Andrews v. Commonwealth, 37 Va. App. 479, 494, 559 S.E.2d 401, 409 (2002). As a result, we conclude that Rule 5A:18 bars our consideration of this specific issue.

In sum, the appellant's argument that all of the conduct which comprises the elements of the stalking offense must occur within the one-year statute of limitations fails. The statute of limitations began to run when the crime was complete, which was in April of 2014. To hold otherwise would insulate from prosecution a defendant who engages in prohibited contact every year for a series of years as long as each subsequent contact occurs more than 365 days after the previous contact. This interpretation would lead to an absurd result and cannot have been what the General Assembly intended when it enacted the statutory scheme. See Turner v Commonwealth, 65 Va. App. 312, 325, 777 S.E.2d 569, 576 (2015) (rejecting the defendant's proposed interpretation of a statute because it "would lead to absurd results"). Consequently, the trial court did not err in allowing the jury to consider the evidence of the earlier contacts as probative of the "on more than one occasion" element of the crime and in refusing the proffered jury instructions, which would have limited the use of such evidence.[2] We do not address whether the conduct in the 1990s constituted a separate offense because the appellant did not make this argument in the trial court.

---

[2] Whether the trial court erred by not requiring the jury to limit its consideration of the appellant's prior contacts with D.B. is integrally related to his first assignment of error. That assignment of error challenges the admission of testimony about the appellant's contacts with D.B. that occurred before the time period alleged in the warrant. The appellant alternatively contends that the testimony was admissible for only a limited purpose and it should not have been considered as proof of whether he engaged in conduct that violated the "on more than one occasion" element of the statute. As this opinion makes clear, the challenged evidence was probative to the "on more than one occasion" element of the offense. As evidence of an element of the offense, the testimony was admissible without limitation. See Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616 (1990) ("Evidence of other crimes is admissible if it tends to prove any fact in issue . . . ."); Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985) (holding that evidence of other crimes "relevant to an issue or element" is admissible). In light of this holding, we need not consider the appellant's argument that the evidence was admissible for a limited purpose or the Commonwealth's contention that the appellant failed to properly preserve his argument below. See, e.g., Commonwealth v. Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) (noting that appellate courts decide cases on the "*best and narrowest* ground[] available" (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010))).

B. Sufficiency of Evidence

The appellant's third and fourth assignments of error challenge the sufficiency of the evidence to support his conviction. He argues that the evidence was insufficient because the Commonwealth did not prove that he engaged in conduct directed at the victim during the time period alleged in the warrant. The appellant also contends that the Commonwealth failed to prove that his conduct placed D.B. in reasonable fear of death, criminal sexual assault, or bodily injury.

We review a challenge to the sufficiency of the evidence under well-settled legal principles. On appeal, this Court considers the evidence in the light most favorable to the Commonwealth, as the prevailing party below, granting to it all reasonable inferences that flow from the evidence. Clark v. Commonwealth, 279 Va. 636, 640, 691 S.E.2d 786, 788 (2010). "Viewing the record through this evidentiary prism requires [the Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth . . . .'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). We will reverse a trial court's refusal to set aside a jury verdict only if that verdict was "plainly wrong or without evidence to support it." Code § 8.01-680. "If there is evidence to support the conviction[], the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Clark, 279 Va. at 641, 691 S.E.2d at 788. The pivotal question on appellate review of a sufficiency challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

## 1.  Prior Contacts

The appellant contends in his assignment of error that "[t]he trial court erred by denying [his] motions to strike the charge of stalking and motion to set aside the verdict where the Commonwealth failed to prove that [he] engaged in conduct directed at [D.B.] on more than one occasion during April of 2014."  In support of this claim, he argues that the Commonwealth failed to establish two or more contacts within the timeframe alleged in the warrant.[3]

In support of his sufficiency challenge based on the warrant, the appellant cites authorities that pertain to issues other than the sufficiency of the evidence.  He references Bissell v. Commonwealth, 199 Va. 397, 399, 100 S.E.2d 1, 3 (1957), and Raja v. Commonwealth, 40 Va. App. 710, 720-21, 581 S.E.2d 237, 242-43 (2003), in which the Supreme Court and this Court considered whether an arrest warrant was defective.  Similarly, the appellant cites procedural requirements for warrants for the proposition that they must "describe the offense charged with reasonable certainty" and provide the accused with notice of the nature and character of the offense.  See Code § 19.2-72 (listing requirements for criminal warrants); Rules 3A:4 (governing issuance and execution of arrest warrants), 3A:6(a) (providing the content requirements of an indictment or information).  However, the appellant's assignment of error does not allege that the warrant was defective or that he did not receive due process because of a

---

[3] The warrant of arrest charged the appellant with violating Code § 18.2-60.3 "on or about 04/14/2014 to 04/16/2014" by, "on more than one occasion[,] engag[ing] in conduct directed at D.B. with the intent to place, or when [he] knew or reasonably should have known that the conduct placed, such person in reasonable fear of death, criminal sexual assault, or bodily injury."

variance between the dates alleged in the warrant and those proved at trial.[4] This Court is limited

to reviewing the assignments of error presented by the litigant. See Rule 5A:12(c)(1)(i); Whitt v.

Commonwealth, 61 Va. App. 637, 646-47, 739 S.E.2d 254, 259 (2013) (*en banc*); Thompson v.

Commonwealth, 27 Va. App. 620, 626, 500 S.E.2d 823, 826 (1998) (noting that Rule 5A:12(c),

unlike Rule 5A:18, "contains no 'good cause' or 'ends of justice' exceptions"); cf.

Commonwealth v. Bass, 292 Va. 19, 26-32 & n.4, 786 S.E.2d 165, 169-72 & n.4 (2016) (holding

that failing to raise a claim regarding a variance between the charging document and the

evidence in proper form in the trial court results in a waiver under the contemporaneous

objection rule). Consequently, we do not consider issues touched upon by the appellant's

argument but not encompassed by his assignment of error.

The appellant's assignment of error expressly challenges only the sufficiency of the

evidence to prove an element of the offense. It is clear that in a criminal case appealed on

sufficiency grounds, the relevant question is whether "[any] rational trier of fact could have

found the essential *elements* of the crime beyond a reasonable doubt." Maxwell, 275 Va. at 442,

657 S.E.2d at 502 (emphasis added) (quoting Jackson, 443 U.S. at 319). The appellant's

sufficiency challenge fails because, insofar as the wording of his assignment of error is

concerned, the dates alleged in the warrant have no bearing on whether the evidence was

---

[4] Established precedent provides that "when time is . . . of the essence of the offence," the charging instrument must "set out . . . the date of the alleged offence" and the prosecution is "confined to the time as stated." Cool v. Commonwealth, 94 Va. 799, 800-01, 26 S.E. 411, 411 (1896). Further, when time is of the essence, a warrant that does not meet these requirements is procedurally defective. See id. (holding that time was "of the essence" of the offense charged because the alleged date of the offense determined the statutorily prescribed punishment in light of a statutory amendment). In Raja, this Court considered whether the arrest warrant for stalking was defective. We recognized that when a "particular charge, by its very nature, involves multiple instances of conduct," if "the date of the offense" is not "'shown to be significant,' the Commonwealth is not required to charge that it occurred on a specific date." Raja, 40 Va. App. at 721, 581 S.E.2d at 242 (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 622, 347 S.E.2d 167, 169 (1986)).

sufficient to establish the three elements of this offense.  See Stephens, 288 Va. at 155, 762 S.E.2d at 761 (listing the elements of stalking).  The only element relating to the "time" of the commission of the offense is the element that the appellant "directed his . . . conduct toward the victim on at least two occasions."  Id.  The evidence establishes that he did so.

The Commonwealth was permitted to prove that the offense occurred on a date different than the dates referenced in the warrant.  See Raja, 40 Va. App. at 721, 581 S.E.2d at 242.  Consequently, we conclude that the appellant's third assignment of error challenging the sufficiency of the evidence establishing that the offense occurred on the dates alleged in the warrant must fail.

## 2.  Victim's Fear

An element of the offense of misdemeanor stalking is that the defendant's conduct caused the victim "to experience reasonable fear of death, criminal sexual assault, or bodily injury."  See Stephens, 288 Va. at 155, 762 S.E.2d at 761 (quoting Parker, 24 Va. App. at 685, 485 S.E.2d at 152).  The appellant argues that the evidence was insufficient to prove this element of the offense.

The standard for determining fear is "an objective one."  Id. at 157, 762 S.E.2d at 762.  "A victim need not specify what particular harm she fears to satisfy" this element.  Id.; see also Parker, 24 Va. App. at 685-86, 485 S.E.2d at 152 (decided under a former version of Code § 18.2-60.3).  Further, the law is clear that "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Breeden v. Commonwealth, 43 Va. App. 169, 177, 596 S.E.2d 563, 567 (2004) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)).  Nevertheless, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination

of the defendant." Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997)

(quoting Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)).

"Whether an alternative hypothesis of innocence is reasonable is a question of fact . . . ." Id.

D.B. testified about the numerous times that the appellant contacted her against her wishes. The two met at work in Richmond in 1990 and initially were cordial but merely distant co-workers. D.B. did not provide the appellant with any of her contact information, nor did she have any type of relationship with him. However, for two years after D.B. moved to another city, the appellant telephoned her and wrote her letters averring that he wanted to marry her. The unsolicited calls and letters stopped only after D.B. moved out of state to a third city. Once D.B. moved back to Richmond in 1995, however, the appellant resumed unwanted contact by leaving her letters at her workplace. In those letters, the appellant told her that he still wanted to have a relationship with her. The appellant approached D.B. in her workplace parking lot during this period, and his tone was aggressive. He stopped for "a few" years only after being told to do so by law enforcement. Then, he found D.B. again and confronted her in her workplace parking lot. He grabbed her car door and yelled, "Why won't you talk to me?" Again, a law enforcement officer contacted the appellant, and the appellant agreed that he would stop contacting D.B. Regardless of his assurance, after a fifteen- to sixteen-year hiatus, the appellant approached D.B. in her workplace parking lot. This time, he repeatedly asked her if she could be his doctor, even after she said no and told him to leave. The appellant left only after D.B. entered the building and a security guard went outside to the parking lot. D.B. testified that she "felt intimidated" and "scared that this . . . was getting more and more aggressive." According to the guard, D.B. was upset and said that "he['s] back, he found me." D.B. was worried that "[the appellant] might try to hit [her] or do something violent."

- 15 -

The appellant argues that the evidence was insufficient to prove the requisite element of fear because of the long gap that preceded the April 2014 contact. He also argues that he never threatened D.B. and in their final encounter he "only asked [D.B.] to be his doctor and then left when she told him to leave."

Although the appellant never actually touched D.B. or made specific verbal threats of harm, explicit threats are not the only means by which someone can instill reasonable fear in another. See Parker, 24 Va. App. at 685-86, 485 S.E.2d at 152 (affirming stalking conviction based on a "barrage of unwelcome phone calls" even though the defendant did not overtly threaten the victim). Based on the evidence, the jury was not plainly wrong in concluding that the appellant's actions would place an ordinary, reasonable person in fear of death, criminal sexual assault, or bodily injury. The jury could reasonably conclude that the appellant's fifteen-year absence before he contacted D.B. again would cause a reasonable person to be *more* fearful, not less. It is entirely logical that D.B. viewed the appellant's fixation on her as more threatening due to its long duration and unpredictability. Further, the evidence supported an inference that the appellant's persistence and ability to locate her would reasonably cause D.B. fear as the target of his obsession. Finally, the appellant's characterization of the last encounter between him and D.B. does not view the evidence in the light most favorable to the Commonwealth and fails to take into account D.B.'s specific testimony regarding her fear of him as a result of their encounters. See, e.g., Clark, 279 Va. at 640, 691 S.E.2d at 788. Based on the record before us, the evidence was sufficient for the jury to find beyond a reasonable doubt that the appellant's conduct caused D.B. to experience reasonable fear of death, criminal sexual assault, or bodily injury.

## III. CONCLUSION

The trial court did not err by rejecting the appellant's proposed jury instructions and allowing the jury to consider evidence of the appellant's contacts with D.B. that occurred before the time period alleged in the warrant as relevant to the "on more than one occasion" element of the offense. Further, the trial court did not err by admitting that evidence. In addition, the Commonwealth was allowed to prove that contacts comprising elements of the offense occurred on a different date than that contained in the warrant, and consequently the appellant's challenge to the sufficiency of the evidence establishing that the offense occurred on the dates alleged in the warrant fails. Finally, the nature and duration of the appellant's contacts with D.B. and her testimony regarding her fear supported the jury's finding that his conduct instilled a reasonable fear of death, criminal sexual assault, or bodily injury. Accordingly, the appellant's sufficiency challenge to the evidence supporting the element of reasonable fear is without merit. For these reasons, we affirm.

Affirmed.