COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Russell and AtLee
Argued by teleconference

**PUBLISHED**

DUSTIN CLINTON DELP

v.      Record No. 1539-19-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
JUNE 30, 2020

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst, Judge[1]

Hyatt B. Shirkey (Hyatt Browning Shirkey Law Firm, on brief), for
appellant.

Maureen E. Mshar, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Consistent with the terms of his plea agreement, Dustin Clinton Delp pled no contest to, was

convicted of, and sentenced for statutory burglary, larceny of a firearm, and possession of a firearm

after previously having been convicted of a violent felony.[2]  As a result of these convictions,

previously suspended sentences for other offenses committed by Delp were revoked and

resuspended on specified conditions.  Approximately four months prior to his plea and revocation

hearings, Delp appeared before the trial court and requested new court-appointed counsel.  The trial

court denied the request.  On appeal, Delp contends that "[t]he trial court erred by requiring [him]

to proceed through a plea hearing and sentencing with" his court-appointed counsel because it

_____

[1] Judge J. Christopher Clemens presided over the March 18, 2019 hearing that resulted in
the trial court granting appellant's request to continue his case for a jury trial until July 16, 2019,
and in it denying appellant's motion for a new lawyer, which is the subject of this appeal.

[2] Consistent with the terms of the plea agreement, the trial court granted the
Commonwealth's motion seeking to *nolle prosequi* a fourth charge, felony possession of
ammunition by a convicted felon.

did "not conduct[ a] sufficient and specific inquiry into [his] request for a new court-appointed attorney" before denying that request. For the reasons that follow, we conclude that Delp's plea waived any argument he may have had in this regard. Accordingly, the judgment of the trial court is affirmed.

BACKGROUND[3]

On appeal, we view the record in the light most favorable to the Commonwealth because it was the prevailing party below. See Huguely v. Commonwealth, 63 Va. App. 92, 110 (2014).

On October 1, 2018, the grand jury for the City of Roanoke indicted Delp on four felonies and the trial court appointed an attorney to represent him. After two continuances, the matter was set to be resolved by plea agreement on March 18, 2019. On that date, Delp appeared before the trial court with his court-appointed counsel. When asked by the trial court if the parties were ready to proceed, the Commonwealth responded in the affirmative; however, Delp indicated he had changed his mind regarding the plea, requested new counsel, and asked for a jury trial.

Faced with Delp's apparent change in position, the trial court asked, "what happened with the agreement, Mr. Delp?" Delp responded by saying that, initially, his attorney had come to see him only "two or three times" since his appointment in October. Delp indicated that when he suggested taking the matter before a jury, the attorney had "basically in so many words said no." Delp further asserted that when he recently had indicated interest in a possible plea, the attorney came to visit "four times in one week[.]" Delp reiterated to the trial court that he did not want to enter the plea, wanted a jury trial on the charges, and wanted a new attorney.

---

[3] On appeal, Delp challenges the trial court's denial of his request for new counsel; he does not argue that the evidence proffered by the Commonwealth at his plea hearing was insufficient to establish his guilt. Accordingly, we recite the procedural history that is relevant to his appeal and do not delineate the facts relied upon by the Commonwealth to demonstrate Delp's guilt.

After confirming that Delp wanted a jury trial, the trial court asked what witnesses Delp needed for his defense. Delp identified three people. The trial court then asked Delp to specify what his counsel had not done to Delp's satisfaction. Delp indicated that he had requested to see all of the Commonwealth's evidence against him but had not been shown it and that he wanted his counsel to "act like he [is] a lawyer."

The trial court granted Delp's request for a jury trial. In doing so, the trial court explained some of the differences between a jury trial and a bench trial or a plea agreement. Specifically, the trial court described for Delp the sentences Delp faced, that, as a result of mandatory minimums, the jury would be required to sentence him to at least eight years in prison if it found him guilty of all charges. The trial court further instructed Delp that juries, unlike judges, did not have the power to suspend sentences. The trial court also informed Delp that the jury could acquit him of all charges, resulting in no jail time.

The trial court then explained plea agreements, which it described as a "compromise[.]" The trial court noted that, in the event of a plea agreement, the prosecutor could agree to dismiss some of the charges in exchange for the agreement. Delp indicated that he understood all of this and still wanted a jury trial. A June 20, 2019 trial date ultimately was selected.

The trial court denied Delp's request for new counsel, but it attempted to address Delp's stated concerns regarding counsel. The trial court explained that, although Delp's counsel had reviewed the Commonwealth's file, which included audio and video recordings, he could not bring the file to Delp or copy everything that was in it. Rather, counsel was permitted to take notes regarding the file and could share that information with Delp. The trial court informed Delp that his counsel did not "know exactly what [the Commonwealth's] witnesses are going to testify to until they get here. They don't write out what they're going to testify ahead of time." Having informed Delp of these facts, the trial court directed Delp's counsel to "follow through"

- 3 -

on the witnesses Delp had identified and "show [Delp] his notes on what the Commonwealth's case is against" Delp. The trial court inquired if that course of action was "[o]kay" with Delp, and Delp responded in the affirmative.

On March 26, 2019, the Commonwealth requested a capias be issued based upon Delp's alleged violation of previously suspended sentences. On June 13, 2019, the parties jointly moved to continue the June 20, 2019 trial. The basis set forth in the written motion was that Delp "intends on pleading guilty and would like to do so at the same time and date as his revocation" hearing, which had been set for July 16, 2019.

The parties entered into a written plea agreement, dated July 16, 2019. The agreement required Delp to plead "guilty or no contest" to statutory burglary, larceny of a firearm, and possession of a firearm after having previously been convicted of a violent felony and stipulated that the trial court would find him guilty of these charges. If accepted by the trial court, the agreement required the trial court to enter "[a]n order of *nolle prossequi*" regarding the possession of ammunition by a convicted felon charge. Among other matters, the written agreement established the sentences to be imposed, restitution to be paid, and post-release conditions. The written agreement contained no provision regarding the effect of Delp's pleas on his ability to file an appeal.

On July 16, 2019, the parties appeared before the trial court and presented the written plea agreement to the trial court. Consistent with its terms, Delp entered pleas of "no contest" to the specified charges. Before accepting the pleas or the plea agreement, the trial court conducted a colloquy with Delp.

As even Delp acknowledges, the colloquy was a standard colloquy, covering a variety of subjects. Among other things, Delp acknowledged during the colloquy that he had discussed the case with his counsel, that his counsel had reviewed with him the Commonwealth's evidence

against him, that he understood that he had the right to plead not guilty, that he was entering his pleas voluntarily, that he was the person who had made the decision to enter his pleas, that he was entering his pleas "freely and voluntarily[,]" and that he was satisfied with the assistance he had been provided by counsel. Before accepting Delp's pleas, the trial court asked Delp to confirm that he understood that, by entering the pleas, Delp was giving up certain rights, including the "right to confront and challenge the testimony against you . . . [, the] right against self-incrimination, and for all practical purposes . . . *any meaningful opportunity to appeal*." (Emphasis added). Delp unequivocally acknowledged that he was giving up these rights.

Based on Delp's responses during the colloquy, the trial court accepted the plea agreement, found Delp guilty of the offenses specified in the plea agreement, and dismissed the possession of ammunition by a convicted felon charge. In so doing, the trial court made the following findings of fact:

> I find it to be true that you've been present here in open court throughout these proceedings. Your attorney has been here present with you throughout and he has capably and competently assisted you. I find it to be true that you do understand the nature and the consequences of your pleas, the rights you give up, and the maximum punishment that you face. I also find it to be true that the pleas that you entered today were done knowingly and intelligently and voluntarily.

In the same proceeding, the Commonwealth presented evidence of Delp's newly acquired convictions as violations of his probation. Delp presented evidence in mitigation, and the trial court revoked a portion of Delp's previously suspended sentences.

The trial court entered separate sentencing orders for each of the three new offenses for which Delp was convicted. In each order, the trial court recited that it had engaged in a plea colloquy with Delp and "found that [Delp] fully understood the nature and effect of his plea and of the penalties that may be imposed upon his conviction and of *the waiver of trial by jury and of appeal*" when he entered his pleas. (Emphasis added). At no point while the matter was within

- 5 -

the breast of the trial court did Delp object to or otherwise contest the trial court's findings that he entered his pleas knowingly, voluntarily, and intelligently; that he had waived his right of appeal; or that his attorney's services had been "capabl[e] and competent[ .]"

Twenty-two days after entry of the sentencing orders, Delp's trial counsel filed a notice of appeal regarding each of the new convictions and the revocations. The next day, he filed a motion to withdraw, seeking appointment of new counsel to handle Delp's appeal. The trial court granted that motion and appointed Delp's current counsel for purposes of appeal.

On appeal, Delp challenges the trial court's handling of his request for new counsel. Specifically, he contends that the "trial court erred by requiring [him] to proceed through a plea hearing and sentencing with [his original counsel] having not conducted sufficient and specific inquiry into [the] request for a new court-appointed attorney." In response, the Commonwealth argues that Delp's pleas waived his right of appeal. In the alternative, the Commonwealth argues that the trial court handled Delp's request for new counsel appropriately.

ANALYSIS

I. Standard of review

"The issue of whether a defendant has waived his right of appeal in connection with a plea proceeding 'is a matter of law[.]'" United States v. Manigan, 592 F.3d 621, 626 (4th Cir. 2010) (quoting United States v. Brown, 232 F.3d 399, 403 (4th Cir. 2000)). Questions of law are subject to *de novo* review on appeal, Gilbert v. Commonwealth, 47 Va. App. 266, 270 (2005), and therefore, we review the Commonwealth's legal assertion that Delp's pleas waived his right to appeal this issue under this standard.[4] We nevertheless view the underlying facts and the

---

[4] "The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." Commonwealth v. Swann, 290 Va. 194, 196 (2015) (internal quotation marks and citations omitted). Because we conclude that Delp's pleas waived his right to appeal the issue he has raised, we do not reach the other issues raised by the parties.

record in the light most favorable to the Commonwealth because it was the prevailing party below. Huguely, 63 Va. App. at 110.

## II. Guilty pleas as appeal waiver[5]

As the Commonwealth correctly notes, Virginia historically has treated a guilty plea as an appeal waiver. Specifically, in an uninterrupted line of cases, Virginia courts adopted a bright-line rule: "[a]n unconditional guilty plea constitutes a waiver of the right to appeal all non-jurisdictional antecedent rulings and cures all antecedent constitutional defects[.]" Terry v. Commonwealth, 30 Va. App. 192, 197 (1999) (*en banc*) (internal quotation marks and citations omitted) (alteration in original)[6]; see also Miles v. Sheriff, 266 Va. 110, 114 (2003); Walton v. Commonwealth, 256 Va. 85, 91 (1998) (collecting cases); Savino v. Commonwealth, 239 Va. 534, 539 (1990); Peyton v. King, 210 Va. 194, 197 (1969); Johnson v. Commonwealth, 38 Va. App. 137, 143 (2002); Clauson v. Commonwealth, 29 Va. App. 282, 290 (1999); Dowell v. Commonwealth, 12 Va. App. 1145, 1148 (1991), adopted on reh'g, 14 Va. App. 58 (1992). As the above-referenced quote from Terry makes clear, the waiver not only applies to claims of ordinary error, but also waives constitutional claims. 30 Va. App. at 197; see also Brown v.

---

[5] Although Delp entered no contest pleas to the charges, we treat such pleas as guilty pleas in determining what appellate rights a defendant has waived. Clauson v. Commonwealth, 29 Va. App. 282, 294 (1999). Because much of the controlling caselaw refers to "guilty pleas," we will refer to Delp's pleas as guilty pleas in our analysis.

[6] Code § 19.2-254 creates a mechanism by which a defendant may plead guilty but preserve his right to appeal in specified circumstances. In pertinent part, the statute provides

> [w]ith the approval of the court and the consent of the Commonwealth, a defendant may enter a conditional plea of guilty in a misdemeanor or felony case in circuit court, reserving the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

Delp neither attempted to make nor made a conditional guilty plea pursuant to Code § 19.2-254, and therefore, it has no application in the instant case.

Commonwealth, 68 Va. App. 58, 70 (2017) ("It is well settled that . . . a plea of guilty . . . waive[s] . . . claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").[7]

Correctly noting that Delp's assigned error, that the trial court failed to conduct a "sufficient and specific inquiry into [the] request for a new court-appointed attorney[,]" does not raise a jurisdictional issue, the Commonwealth argues that the bright-line rule delineated in the above-referenced cases dictates that we deem Delp's appeal waived. In making this argument, however, the Commonwealth did not cite or even acknowledge recent decisions of the United States Supreme Court that may have dimmed Virginia's historical, bright-line rule. We now address those cases.

A. Class v. United States

In Class v. United States, ___ U.S. ___, ___, 138 S. Ct. 798, 802 (2018), Class, pursuant to a written plea agreement, pled guilty in federal district court to possession of a firearm on the grounds of the United States Capitol in violation of 40 U.S.C. § 5104(e). The written plea agreement provided that Class waived certain rights, including "the right to appeal a sentence at or below the judicially determined, maximum sentencing guideline range" and the right to bring "most collateral attacks on the conviction and sentence[.]" Id. The written agreement also

---

[7] Virginia has recognized an exception to this bright-line rule. A person who pleads guilty may challenge whether the plea itself was knowing, voluntary, and intelligent on direct appeal. See, e.g., Terry, 30 Va. App. at 197. At no point in the trial court did Delp object to or otherwise challenge the trial court's finding that he entered his pleas knowingly, voluntarily, and intelligently. Furthermore, in his assignment of error, Delp did not challenge the knowing, voluntary, and intelligent nature of his pleas, asserting instead that the trial court committed a procedural error in failing to conduct a "sufficient and specific inquiry into [the] request for a new court-appointed attorney." We are "limited to reviewing the assignments of error presented by the litigant[,]" Banks v. Commonwealth, 67 Va. App. 273, 289 (2017), and cannot "consider issues touched upon by [Delp]'s argument but not encompassed by his assignment of error." Id. at 290. Thus, despite Delp's use of the phrase "knowing, free, and voluntary" regarding his pleas on multiple occasions in his brief, the issue of the knowing, voluntary, and intelligent nature of Delp's pleas is not before us in this appeal.

"expressly enumerated categories of claims that Class could raise on appeal, including claims based upon (1) newly discovered evidence; (2) ineffective assistance of counsel; and (3) certain statutes providing for sentence reductions." Id. The agreement was silent as to whether Class could challenge, as he had done in the trial court prior to entering his plea, the constitutionality of the statute of conviction on appeal. Id. Prior to accepting Class' plea, the district court conducted a colloquy with Class pursuant to constitutional requirements and Rule 11 of the Federal Rules of Criminal procedure to guarantee that Class' guilty plea was entered knowingly, voluntarily, and intelligently. Id. Having done so, the district court accepted Class' plea and sentenced him consistent with the plea agreement. Id.

Class then noted an appeal to the United States Court of Appeals for the District of Columbia Circuit to challenge the constitutionality of the statute of conviction. Id. The Court of Appeals for the D. C. Circuit rejected the appeal, holding "that Class could not raise his constitutional claims because, by pleading guilty, he had waived them." Id. at ____, 138 S. Ct. at 802-03. Class then appealed to the Supreme Court of the United States, which granted certiorari "to decide whether in pleading guilty a criminal defendant inherently waives the right to challenge the constitutionality of his statute of conviction." Id. at ____, 138 S. Ct. at 803.

The United States Supreme Court reversed. Although recognizing that "a guilty plea does implicitly waive some claims, including some constitutional claims[,]" the Class majority concluded that "Class' valid guilty plea does not, by itself, bar direct appeal of his constitutional claims in these circumstances." Id. at ____, 138 S. Ct. at 805. Specifically, the majority concluded that because Class' claim on appeal "call[ed] into question the Government's power to '"constitutionally prosecute"'" him at all for the charged offense, his "guilty plea [did] not bar a direct appeal in these circumstances." Id. (Citations omitted).

In coming to this conclusion, the United States Supreme Court expressly recognized "that a guilty plea *does* implicitly waive some claims, including some constitutional claims." Id. (Emphasis added). It explained that a guilty plea "forgoes not only a fair trial, but also other accompanying constitutional guarantees[,] . . . includ[ing] the privilege against compulsory self-incrimination, the jury trial right, and the right to confront accusers[.]" Id. (internal quotation marks and citation omitted). Furthermore, it reiterated that "[a] valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." Id. Finally, the Class Court noted that "a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" Id. (quoting United States v. Broce, 488 U.S. 563, 573-74 (1989)).

B. Garza v. Idaho

Roughly a year after deciding Class, the United States Supreme Court returned to the issue of a guilty plea as an appeal waiver in Garza v. Idaho, ___ U.S. ___, 139 S. Ct. 738 (2019). In Garza, Garza, by way of written plea agreements, pled guilty to "criminal charges brought by the State of Idaho. Each agreement included a clause stating that Garza waive[d] his right to appeal." Id. at ____, 139 S. Ct. at 742 (alteration in original, internal quotation marks and citation omitted). The trial court in Idaho accepted the pleas and sentenced Garza to the term of imprisonment specified in the agreements. Id.

Shortly thereafter, Garza informed "his trial counsel that he wished to appeal." Id. at ___, 139 S. Ct. at 743. Garza's counsel declined to file a notice of appeal because he "recogniz[ed] that his client had waived this right and that filing an appeal would potentially jeopardize [the] plea bargain." Id. at ____, 139 S. Ct. at 750 (Thomas, J., dissenting).

After no notice of appeal was filed by the applicable deadline, Garza filed a state habeas proceeding asserting that his counsel was constitutionally ineffective because he had not filed a notice of appeal as directed. Id. at ____, 139 S. Ct. at 743. He was denied relief by the Idaho trial court, the Idaho Court of Appeals, and the Idaho Supreme Court, which determined that, "given the appeal waivers," Garza could show neither that his counsel's performance was deficient nor that he had suffered prejudice as a result of counsel's failure to note an appeal. Id.

The United States Supreme Court granted certiorari and reversed. Id. Relying on a line of cases that held that counsel is ineffective if he or she does not note an appeal when a client requests it and that prejudice can be presumed when counsel's failure forfeits the defendant's entire right of appeal, the Garza majority concluded that "an attorney perform[s] deficiently in failing to file a notice of appeal despite the defendant's express instructions" and that "prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims.'" Id. at ____, 139 S. Ct. at 750 (quoting Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000)). As a result, the Garza Court concluded that, despite the express waiver of Garza's right to appeal, Garza's counsel was constitutionally ineffective in failing to note an appeal and that Garza was entitled to proceed with an appeal as a result. Id. at ____, 139 S. Ct. at 747.

In doing so, the Garza Court did not conclude that appeal waivers are ineffective generally or even that any claim Garza ultimately made on direct appeal would not be deemed waived. To the contrary, it recognized that appeal waivers can be valid and that a defendant's appeal waiver can result in him "giving up some, many, or even most appellate claims[.]" Id. at ____, 139 S. Ct. at 745. Rather, it based its decision on the fact that *some* claims may survive such waivers because "all jurisdictions appear to treat at least some claims as unwaiveable[,]" id. at ____, 139 S. Ct. at 744, and therefore, "Garza did retain a right to his appeal; he simply had fewer possible claims than some other appellants." Id. at ____, 139 S. Ct. at 748.

Distilled to its essence, Garza compels counsel to note an appeal if the client requests it even if counsel believes that any potential appellate claim has been waived by the client's guilty plea. Because some appellate claims survive appeal waivers, counsel should not preemptively decide that a claim has been waived, but rather, should leave it to a court to determine that a guilty plea has waived a particular claim.

## III. Delp's plea as appeal waiver

We now turn to whether Delp's pleas waived the issue he presents on appeal. Assuming without deciding that the United States Supreme Court's decision in Class modified the historical Virginia rule and imposed a more forgiving standard regarding guilty pleas as appeal waivers, we nonetheless still conclude that Delp's pleas in this case waived the issue he presents on appeal.[8] Accordingly, for the following reasons, we affirm the judgment of the trial court.

Like Class, Delp's written plea agreement did not specify that he was waiving the claim he presses on appeal. Also, like Class, Delp participated in a colloquy in which he acknowledged to the trial court that he understood his plea waived at least some appellate rights.[9] Despite these similarities, the other circumstances demonstrate that Delp, unlike Class, waived his right to appeal the issue he presents.

---

[8] Because Class involved a federal criminal proceeding and was decided, at least in part, on the language of Rule 11 of the Federal Rules of Criminal Procedure, an argument can be made that its holding does not apply to state criminal proceedings. The decision in Garza involves a state criminal proceeding, but did not expressly apply the Class standard to state proceedings. Given our ultimate conclusion that Delp's appellate claim is barred under the more forgiving Class standard, we need not answer the overarching legal question of whether Class modified existing Virginia precedent or the more stringent, historical Virginia standard still applies. Cf. Butcher v. Commonwealth, ___ Va. ___, ___, 838 S.E.2d 538, 541 (2020) (Kelsey, J., plurality opinion) (concluding that a Virginia appellate court may decline to answer overarching legal questions when the end result of the appeal is the same regardless of the answer to that overarching question).

[9] As noted above, Delp responded in the affirmative when the trial court asked if he understood that, by entering his pleas, he was waiving "any meaningful opportunity to appeal."

- 12 -

First, we note that the trial court memorialized Delp's guilty plea waiver in the sentencing orders with each order providing that it "found that [Delp] fully understood the nature and effect of his plea and of the penalties that may be imposed upon his conviction and of *the waiver of trial by jury and of appeal*" when he entered his pleas. (Emphasis added). Delp conceded at oral argument in this Court that he lodged no objection nor otherwise challenged the trial court's findings in this regard while the matter was in the trial court. Furthermore, the trial court expressly found that Delp's pleas and waiver of rights, including the right to appeal, were entered into knowingly, voluntarily, and intelligently. Delp did not contest those findings in the trial court or in the assignment of error he presents on appeal.[10]

Finally, and perhaps most importantly, to reach Delp's claim on appeal would require us to allow him to "contradict the 'admissions [he] made upon entry of a voluntary plea of guilty.'" Class, ___ U.S. at ___, 138 S. Ct. at 805 (quoting Broce, 488 U.S. at 573-74). Specifically, Delp's argument on appeal asserts that the trial court erred in failing to "conduct[ a] sufficient and specific inquiry into [his] request for a new court-appointed attorney[,]" implying that such an inquiry would have revealed sufficient problems to require his motion for a new attorney be granted. The specific complaint Delp raised in seeking new counsel was an alleged failure of his counsel to inform him of the evidence the Commonwealth had against him. In denying the request for new counsel, the trial court directed Delp's counsel to share that information with Delp.

Some months later at the plea colloquy, Delp confirmed that his counsel had done as instructed. Specifically, Delp responded "Yes, [s]ir[,]" when the trial court asked if his attorney had reviewed with him the Commonwealth's evidence against him. Delp also responded affirmatively when asked if he was "satisfied with the assistance of [his] attorney[.]"

---

[10] See footnote 7, supra.

Furthermore, Delp did not object or otherwise challenge in the trial court the trial court's finding that his attorney's services had been "capabl[e] and competent[.]"

Delp's claim on appeal cannot be reconciled with the answers he gave at the colloquy. In fact, at oral argument in this Court, Delp acknowledged that, to grant him the relief he seeks for the reasons he seeks it, we would be required to "discount if not completely discredit [his] responses during the colloquy" in the trial court. Because even the more forgiving <u>Class</u> standard recognizes that a "guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty[,]'" <u>id.</u> at ___, 138 S. Ct. at 805 (quoting <u>Broce</u>, 488 U.S. at 573-74), it is clear that Delp's pleas waived the claim he now asserts on appeal. Accordingly, we affirm the judgment of the trial court.

CONCLUSION

For the foregoing reasons, we conclude that Delp's pleas waived the issue he seeks to present on appeal. Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>