COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Chaney and Frucci

TERENCE LAMONT WILSON

v.      Record No. 0818-24-4

HILARY NICOLE YANCEY                    MEMORANDUM OPINION*
                                            PER CURIAM
                                         FEBRUARY 11, 2025
TERENCE LAMONT WILSON

v.      Record No. 0918-24-4

HILARY NICOLE YANCEY


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                         John M. Tran, Judge

        (Pamela L. Cave, on brief), for appellant.

        No brief for appellee.


        Terence Lamont Wilson appeals the circuit court's order granting Hilary Nicole Yancey a

one-year protective order under Code § 16.1-279.1.[1]  Wilson argues that the circuit court erred

by granting the protective order without properly articulating the necessary findings.

        Finding no error, we affirm the circuit court's judgment.  After examining the briefs and

record in this case, the panel unanimously holds that oral argument is unnecessary because "the

appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

_____

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] Wilson filed duplicate notices of appeal resulting in two different record numbers
before this Court; we granted his motion to consolidate and resolve both cases.

BACKGROUND[2]

Yancey and Wilson were in a romantic relationship between September 2019 and April 2023. Their infant son ("R.W.") and Yancey's eight-year-old daughter, born from Yancey's prior marriage, lived with Yancey at her condominium. Wilson sometimes resided with Yancey, but he "typically" lived at his mother's house nearby. On April 22, 2023, Yancey asked Wilson to watch R.W. at Wilson's mother's house for the evening and stated that Yancey would retrieve R.W. the next day. Wilson demanded that he keep their son longer and asked Yancey to bring over some diapers. Yancey entered Wilson's mother's home with the diapers and other supplies for R.W., visited with R.W., and discussed bringing him back to Yancey's home. Wilson was not "very receptive" and began criticizing Yancey's "parenting styles" and her daughter's "behavioral issues."

Intending to leave, Yancey picked up R.W. and held him with her left arm. Wilson became "very angry" and "started screaming [in Yancey's] face to get the fuck out of his house, over and over, very loudly." Wilson approached Yancey "very aggressively," and she feared for her safety. When Yancey turned her body to shield R.W.'s face, Wilson tried to take R.W. "out of [her] arms." Wilson pulled her shoulder back and "started pinching the skin under [her] arm really hard." After failing to take R.W. from Yancey, Wilson became infuriated, so he took Yancey's shoes and threw them onto the sidewalk outside. Yancey attempted to use her phone to dial 911, but Wilson pushed her arm to prevent her from making the call. Yancey put her arms around R.W. to protect him, and Wilson grabbed Yancey's throat. Yancey did not know "if he was going to start clenching [her throat] closed or not." Wilson then "swung" at Yancey's face; however, she was able to turn quick

    [2] "In accordance with familiar principles of appellate review, we view the facts in the light most favorable to [Yancey], as the prevailing party below." *Price v. Peek*, 72 Va. App. 640, 644 n.1 (2020). Parts of the record in this case were sealed. "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar*, 302 Va. 234, 240 n.2 (2023).

enough so that he just "grazed" her right brow. After Yancey moved, avoiding Wilson's swing, he grabbed her ponytail, "jerking [her] head back."

Wilson was then able to take R.W. from Yancey's arms. After Wilson took R.W., Yancey began screaming for help and Wilson began pushing her down the hallway toward the front door. Yancey tried to prevent Wilson from shutting the door with her right foot, but he managed to close the door. Yancey then called 911 and shortly thereafter police officers and paramedics arrived. Upon arriving, first responders walked Yancey to the ambulance to evaluate her injuries. While the first responders evaluated Yancey and photographed her injuries, she texted Wilson's sister and asked her to come get R.W. After Wilson's sister arrived, she assured Yancey that R.W. was safe and that she would bring him home. Yancey then returned home to her condo. Several hours later, Yancey took photographs that showed bruises on her left arm and right side of her face, as well as red marks on her throat, that she claimed resulted from Wilson's assault.

Yancey sought and received a preliminary protective order from the Fairfax County Juvenile and Domestic Relations District Court ("JDR court"). Upon a full hearing, however, the JDR court denied her protective order request. Yancey appealed to the circuit court. During the circuit court hearing, Yancey testified to the April 2023 incident as well as other acts of violence Wilson had committed. She testified that during two arguments in March and April 2022, Wilson had slapped her across the face. Yancey submitted additional photographs, which she alleged showed bruising from a face slap in April 2022. Yancey had sought a protective order after the April 2022 incident, but she later sent a letter stating she lied about that allegation. However, she testified she had done so only because she was afraid of losing Wilson's financial support and that "[m]aybe he would just let off me a little bit." Since April 2023, Yancey and Wilson had seen each other only during custody exchanges at police stations and communicated over a parenting app, but Yancey still

feared Wilson because he had hired a private investigator and knew where she and her daughter lived.

At the hearing, Wilson gave a very different account. He testified that Yancey often behaved "erratic[ly]" and threatened him during "manic" episodes. According to Wilson, Yancey had agreed that he would care for the infant at his mother's house and that she would drop off some of the infant's items. R.W. had a low-grade fever at the time. Upon arriving, Wilson stated that Yancey entered his mother's home and began accusing him of being unfaithful and calling her daughter a liar. Wilson testified that he denied doing either, but then Yancey insulted his teenage daughter in response, so he told Yancey to "get out." Yancey, who was crying at the time, then "grabbed" R.W., and Wilson told her he did not want the infant to leave. Wilson asserted that he took the infant from her without any physical violence, opened the door, and set her shoes outside. He further claimed that although Yancey "did not put up a struggle or anything regarding [R.W.]" when she approached the door, she began screaming for help. Wilson maintained that he never engaged in violence against Yancey and that her accusations were lies. Wilson explained that he hired a private investigator because the infant had been injured while in Yancey's care and he was concerned that Yancey's abusive ex-husband was living with her.

The circuit court found Yancey's testimony regarding the altercation in Wilson's home in April 2023 more credible than Wilson's, partly because photographic evidence supported it. On that basis, the circuit court granted Yancey and her daughter a one-year protective order against Wilson.[3] On the final order, Wilson objected to the ruling, arguing that the evidence was insufficient to support the finding and that several of Yancey's exhibits should not have been admitted into evidence. This appeal followed.

---

[3] The protective order expires at 11:59 p.m. on April 24, 2025.

ANALYSIS

*I. Waiver*

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (alterations in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)).

On appeal, Wilson argues that the circuit court failed to properly articulate its findings during the hearing. Wilson asserts that the circuit court failed to articulate the "specific act of family abuse" justifying the protective order, such as: "a permanent protective order was necessary," that Yancey's fear was "reasonable," and/or that there was family abuse against Yancey's daughter. For these reasons, he claims the judgment must be reversed. However, Wilson did not raise these arguments in the circuit court. "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* "[A] general argument or an abstract reference to the law is not sufficient to preserve an issue." *Banks v. Commonwealth*, 67 Va. App. 273, 285 (2017) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)). Indeed, "appellate courts will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards*, 41 Va. App. at 761 (quoting *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)).

- 5 -

Wilson never presented his articulation arguments to the circuit court, either during the hearing or in the written objection to the order. Instead, at trial, he challenged only the sufficiency of the evidence. Because Wilson did not object that the circuit court had to articulate all the findings he urges on appeal, we do not consider his arguments. Rule 5A:18. Although there are exceptions to this rule, Wilson does not ask this Court to invoke them, and we will not do so sua sponte. *Edwards*, 41 Va. App. at 761.[4]

*II. Harmless Error*

"[H]armless-error review [is] required in *all* cases." *Moore v. Joe*, 76 Va. App. 509, 516 (2023) (second alteration in original) (quoting *Spruill v. Garcia*, 298 Va. 120, 127 (2019)). "When it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." *Id.* at 516-17 (alteration in original) (quoting Code § 8.01-678). "Thus, '[a]ny error that does not implicate the trial court's subject matter jurisdiction is subject to harmless-error analysis.'" *Id.* at 517 (alteration in original) (quoting *Spruill*, 298 Va. at 127).

Wilson contends that the circuit court improperly considered his refusal to "settle" or agree to the protective order and held that circumstance against him. In pressing his claim, Wilson points to the circuit court's comments that "when anybody ever has a chance not to come to court, they ought to take it because it's hard to know what will come of your case." But we do not "view a trial judge's statements from the bench in isolation." *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 217 (2023). Rather, we consider them in the context in which they were made. The statements Wilson challenges were made not when the circuit court was considering the merits of the protective order but instead were made while the circuit court was

---

[4] While on appeal, Wilson also argues that the length of time that passed between the April 2023 event and the trial did not support the entry of a protective order; he presented no such argument to the circuit court. Thus, that argument is waived. Rule 5A:18.

deciding whether or not "to shift [attorney] fees." Circuit court judges should be encouraged, not discouraged, in suggesting litigants attempt settlement, even on the day of trial, so long as it is done consistent with the Virginia Judicial Canons. The circuit court's settlement statement does not support Wilson's contention that his willingness to litigate was weighed against him as to the findings of fact for the underlying protective order. Thus, any consideration of settlement offers was fundamentally harmless as to the granting of the protective order.[5]

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[5] Wilson does not challenge any finding regarding attorney fees, so we also need not decide whether consideration of settlement offers was appropriate in that context.