COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Lorish
Argued at Norfolk, Virginia

UNPUBLISHED

RANDY LEE HARRIS, SOMETIMES KNOWN AS
 RANDY LEE HARRIS, JR.

                                                    MEMORANDUM OPINION* BY
v.      Record No. 1294-21-1                        JUDGE LISA M. LORISH
                                                    DECEMBER 20, 2022

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                        John R. Doyle, III, Judge

        Harry Dennis Harmon, Jr., for appellant.

        Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
        Attorney General, on brief), for appellee.


        Randy Lee Harris, Jr., was convicted in the City of Norfolk Circuit Court on one count of

burglary, in violation of Code § 18.2-91, one count of grand larceny, in violation of Code § 18.2-95,

and one count of destruction of property, in violation of Code § 18.2-137.  Harris asserts that the

trial court erred in finding the evidence sufficient to support the convictions.  Finding no error in the

trial court's judgment, we affirm.

                                    BACKGROUND[1]

        Anthony Prebe owned a house on Heutte Drive in Norfolk, Virginia.  In February 2018, the

house was "completely intact" and "habitable" with complete copper piping throughout, although

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] "In accordance with familiar principles of appellate review, the facts will be stated in
the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.
Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381
(2016)).

Prebe was remodeling parts of the house. Before leaving the house to visit relatives for three weeks, Prebe stored some boxes and his valuables in the dining room, which he had blocked off with plastic "to keep the dust out of there." He also stored his quality furniture and silk rugs in that room. Upstairs, everything was "nice and orderly." The front door had a deadbolt lock on it, and the attached two-car garage was boarded off so it could be accessed only from the inside of the house.

When he returned from Florida, Prebe had to forcibly push the front door open to get back into the house, because "there was a bunch of stuff strewn in the foyer on the ground" in front of the doorway. Entering the house, Prebe observed that "it was a mess." He saw sheetrock on the floor and "stuff that was just all astray." Entering the dining room, he discovered that all his paintings, all his silk carpets, all his "knickknacks," and a "shield of boxes" were gone. As he ascended the stairs, he observed family mementos and pictures of his relatives strewn on the floor and stepped on. Two burial flags and other Marine Corps mementos were missing. Clutter was everywhere. There was damage to the wall in the upstairs bathroom, and copper pipes were missing. The tub and shower no longer worked. Outside, Prebe noticed that the brick he had placed at the opening of his crawl space appeared to be "slightly off." A hole had been created in the crawl space to access the inside of the house. In the back of the house, all of the copper wires on his pool pump and saltwater generator had been cut, rendering his pool equipment nonfunctional. The copper telephone wiring for the home was also cut and removed. Inside the garage, copper from the water tank, a utility sink, and the circuit breaker were missing. Prebe did not give Harris, or anyone else, permission to enter his home while he was away on vacation.

Forensic Investigator Emmanuel Zablan collected evidence from Prebe's house. He found two Newport cigarette butts in the home—one in the upstairs bathroom and the other in the garage. Zablan placed the cigarette butts in the evidence locker at the Norfolk Police Department. He

collected no other forensic evidence from the scene. In July 2018, the Department of Forensic Science returned a certificate of analysis revealing a possible match for Harris's DNA on the cigarettes.

Investigator Taylor interviewed Harris at his home in June 2019. Harris first told Taylor that he was not familiar with the residence on Heutte Street. After Taylor told him that evidence with his DNA on it was discovered inside the residence, Harris first said that he may have been inside the residence doing a job with his girlfriend's brother and then suggested that he had been framed. Taylor arrested Harris in July 2019 and obtained a buccal swab from Harris to submit for analysis.

Forensic Scientist Lashanda Ogelsbee was qualified to testify as an expert in "Forensic biology, bodily fluid identification and analysis." Ogelsbee testified that she developed a DNA profile from both of the cigarette butts submitted to the lab, and she determined that the same DNA profile was on each cigarette. The profile was from a single contributor. Ogelsbee then compared the DNA profile from the cigarettes to the DNA profile she extracted from Harris's buccal swab and concluded that he "could not be eliminated as the contributor of the DNA profile" and that the "probability of randomly selecting another individual with [a] DNA profile matching that developed from the cigarette butts" was "1 in greater than 7.2 billion."

After the Commonwealth rested its case, Harris moved to strike the evidence. Harris argued that the evidence failed to prove he committed the crimes and asserted that the "cigarettes could have gotten into that house any old kind of way." The trial court denied the motion to strike.

The defense presented no evidence and, instead, renewed its motion to strike. Harris again argued that the evidence failed to prove the cigarettes were left in the house at the time of the offenses and suggested that the cigarettes could have gotten inside the house after he wandered in to "see what's going on." Harris asserted that the evidence failed to prove his guilt. Disagreeing with

Harris's arguments, the trial court again denied the motion to strike and convicted him of all three offenses. Harris noted this appeal.

STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). We consider the evidence "in the light most favorable to the Commonwealth, as the prevailing party below, granting to it all reasonable inferences that flow from the evidence." *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Id.* (quoting *Banks*, 67 Va. App. at 288). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). Instead, "the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

ANALYSIS

Harris argues that the only evidence connecting him to the burglary was the presence of his DNA on two cigarette butts found in the house and that this alone was insufficient to support his convictions.[2]

---

[2] There is no dispute that the Commonwealth satisfied the elements of burglary, grand larceny, and destruction of property, or that the monetary value of the stolen goods and the repair costs supported the felony offenses. The only query on appeal is the identity of the perpetrator.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination about the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)).

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor*, 294 Va. at 512). The statement that circumstantial evidence must exclude every reasonable hypothesis except that of guilt "is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Case v. Commonwealth*, 63 Va. App. 14, 23 (2014) (quoting *Taylor v. Commonwealth*, 61 Va. App. 13, 30 (2012)). To that end, "[c]ircumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

"While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572-73 (2009) (en banc)). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." *Id.* at 286 (quoting *Clanton*, 53

Va. App. at 573). "For a hypothesis of innocence to be reasonable, it must flow from the evidence actually presented; it cannot spring forth from the imagination of an appellant or his counsel." *Jiddou v. Commonwealth*, 71 Va. App. 353, 369 (2019) (quoting *Butcher v. Commonwealth*, 69 Va. App. 406, 420 (2018)).

We disagree with Harris that the facts presented at trial, with all reasonable inferences drawn from them, can be reduced to the mere presence of his DNA in the house without more. Instead, the combination of *where* the DNA was found, the signs of forced entry at the home, and Harris's changing explanations for why his DNA might be present is enough to sustain the convictions. In this case, the two partially smoked cigarettes found inside the house pointed to Harris as the perpetrator. One cigarette was found in the upstairs bathroom and the other in the garage—the very locations in Prebe's home where the wall was damaged, the copper was removed, and the circuit breaker was stolen. Entry to the home was accomplished through the crawl space door and a hole in the floor, confirming that whoever dropped the cigarette butts was not authorized to be there. And the record also supports the trial court's rejection of Harris's morphing hypotheses of innocence. Indeed, when first questioned by Investigator Taylor, Harris denied any familiarity with the residence on Heutte Street. But when Taylor told Harris that his DNA was found inside the house, Harris altered his response and offered two different explanations. He first said that he was helping his girlfriend's brother work on the house. When he could not give any other details about that story, he suggested he might have been framed. At trial, Harris's counsel offered a third possible explanation, arguing that he might have wandered into Prebe's house merely out of curiosity.

Without tangible evidence to support any of these theories, the trial court found Harris's explanations "preposterous," since there was no indication from the outside of the house that "anything was amiss," and because it was clear that the perpetrator gained access to the house "through the crawl space in the back." We cannot say that the trial court was factually incorrect in

finding that Harris's several different hypotheses of innocence about how his DNA came to be inside Prebe's home were not reasonable. Harris simply did not offer the trial court a reasonable hypothesis of innocence that would have created any reasonable doubt about his guilt.

The facts presented at trial, viewed in the light most favorable to the Commonwealth and with all reasonable inferences drawn therefrom, proved Harris's guilt beyond a reasonable doubt. The trial court did not err in concluding that Harris committed burglary, grand larceny, and destruction of property.

## CONCLUSION

For these reasons, we affirm Harris's convictions.

*Affirmed.*