UNPUBLISHED

# COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and AtLee
Argued at Lexington, Virginia

JUSTIN SCOTT MURPHY

v.       Record No. 1175-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE GLEN A. HUFF
SEPTEMBER 19, 2023

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Robert M. D. Turk, Judge

(J. Brandon Ratliff; The Ratliff Law Firm, P.L.L.C., on brief), for
appellant. Appellant submitting on brief.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

A jury convicted Justin Scott Murphy ("appellant") of four charges of statutory burglary, three charges of grand larceny, one charge of attempted grand larceny, and one charge of petit larceny, third or subsequent offense.[1] Appellant contends the trial court erred in denying his motion to dismiss some of the indictments on statutory and constitutional speedy trial grounds. He further asserts the trial court erred in refusing to strike certain jurors for cause. Appellant also challenges the sufficiency of the evidence to prove his identity as the perpetrator of the offenses. Finally, he argues the trial court erred by instructing the jurors to correct their verdict forms after they mistakenly convicted appellant of both the substantive offenses for which he was charged and the lesser-included offenses. Finding no error, this Court affirms the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The jury acquitted Murphy of an additional charge of statutory burglary "of a building owned by Michael Hammonds on or about February 24, 2021."

BACKGROUND

This Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

I.  Procedural History

On March 16, 2020, the Supreme Court issued an order declaring a judicial emergency in response to the COVID-19 pandemic. *See In re: Order Declaring a Judicial Emergency in Response to COVID-19 Emergency* at 1-2 (Va. Mar. 16, 2020) ("First Judicial Emergency Order").[2]  Among other things, the First Judicial Emergency Order "toll[ed] and extend[ed]" "all deadlines" in district and circuit courts for 21 days, consistent with Code § 17.1-330(D). *Id*. Subsequently, the Supreme Court unanimously entered 46 additional judicial emergency orders, each of which extended the period of judicial emergency and tolled and extended certain statutory deadlines, including the deadlines under the Speedy Trial Act, Code § 19.2-243.[3]

---

[2] Additional references in this opinion to the Supreme Court's First Judicial Emergency Order and subsequent related orders are to "[#] Judicial Emergency Order," "[#] Order," or "EDO of [date]." *See* EDO of Apr. 22, 2020, at 1 (referring to the Supreme Court's first three orders "collectively . . . as the 'Emergency Declaration Orders'").

[3] *See* EDOs of Mar. 27, 2020; Apr. 22, 2020; May 1, 2020 (Clarification Order); May 6, 2020; June 1, 2020; June 8, 2020; June 22, 2020; June 22, 2020 (Modification Order); July 8, 2020; July 29, 2020; Aug. 7, 2020 (Amendment Order); Aug. 20, 2020; Sept. 4, 2020; Sept 11, 2020 (Second Clarification Order); Sept. 28, 2020; Oct. 19, 2020; Nov. 9, 2020; Dec. 3, 2020; Dec. 18, 2020; Jan. 19, 2021; Feb. 8, 2021; Mar. 2, 2021; Mar. 15, 2021; Apr. 12, 2021; May 3, 2021; May 17, 2021; May 26, 2021; June 15, 2021; June 29, 2021; July 7, 2021; Aug. 4, 2021; Aug. 11, 2021 (Authorization Order); Aug. 25, 2021; Sept. 20, 2021; Oct. 5, 2021; Oct. 25, 2021; Nov. 18, 2021; Dec. 10, 2021; Dec. 29, 2021; Jan. 20, 2021; Feb. 10, 2021; Mar. 4, 2021; Mar. 25, 2021; Apr. 15, 2021; May 2, 2022; May 27, 2021.

Under those orders, the period of judicial emergency extended from March 16, 2020, through June 22, 2022. *See* EDO of May 27, 2021.

On February 25, 2021, appellant was arrested and held without bail on three charges of statutory burglary, attempted grand larceny of hemp, grand larceny of a vehicle, and two charges of grand larceny of hemp. On April 27, 2021, the general district court certified those charges to a grand jury, which returned true bills of indictment on July 13, 2021. That same day, the Commonwealth directly indicted appellant for two additional charges of statutory burglary and another charge of grand larceny.

On August 17, 2021, the trial court entered an agreed continuance order on appellant's motion setting the matters for a two-day jury trial on September 20 and 21, 2021. The order reflected that appellant's counsel had checked a box indicating that he "agree[d] & stipulate[ed] . . . that the time period" from July 13, 2021, through September 20, 2021, "shall not be included within the time period the case may [be] tried under [Code] § 19.2-243."

On September 14, 2021, the Commonwealth moved to continue the trial date because it needed more time to locate witnesses and prepare a motion to admit cell phone records at trial. Appellant objected to the continuance and asserted his "speedy trial rights." The trial court granted the Commonwealth's motion and continued the jury trial to November 29, 2021.

On November 23, 2021, appellant moved to amend the August 17, 2021 continuance order to reflect that his counsel had not checked the box agreeing that the period from July 13, 2021, through September 20, 2021, would toll statutory speedy trial deadlines. Appellant maintained that due to an unknown "clerical error," "the box waiving" his statutory speedy trial rights "had been check[ed] after endorsement by Defense counsel." Denying the motion, the trial court found no evidence that the order contained a clerical error.

On November 29, 2021, the first day of appellant's jury trial, he moved to dismiss the seven original indictments on speedy trial grounds. In his written motion, appellant asserted that because he was held without bail since his arrest, Code § 19.2-243 required his trial to occur on September 27, 2021, which was five months from the district court's probable cause determination. He argued, therefore, that allowing his trial to proceed would violate his speedy trial rights under the Sixth Amendment to the federal Constitution and Code § 19.2-243. The Commonwealth countered that the Supreme Court's emergency orders tolled statutory speedy trial deadlines. The trial court denied the motion.

During voir dire, the trial court asked whether any members of the venire had "expressed or formed any opinion as to [appellant's] guilt or innocence." One juror responded that she was biased against appellant because he had "parked" his vehicle on her property on the night of one of the burglaries and she saw police investigating the offense, which had been a "very scary" experience. The trial court, without objection, struck the juror for cause.

Appellant's counsel then stated that he "had a motion" for the remaining jurors "because they heard [the struck juror's] explanation." The trial court asked the remaining jurors whether the other juror's comments had created a "bias or prejudice for or against either the Commonwealth or the defendant"; they unanimously replied, "No." The remaining jurors also expressed their understanding that (1) appellant was presumed innocent; (2) the Commonwealth had to prove appellant's guilt beyond a reasonable doubt; and (3) appellant was not required to produce evidence in his defense. The jurors also unequivocally stated that they would fairly and impartially decide the case based solely on the evidence presented at trial and the instructions given by the court. Appellant did not renew his motion to strike the remaining jurors or offer further argument, and the trial court did not rule on the motion.

## II. The Evidence at Trial

From September 2020 through November 2020, appellant worked for a farm that produces industrial hemp for commercial distribution. Appellant harvested the hemp and packaged it in one-pound boxes, each worth $2,500. The boxes were stored in a warehouse on the farm. The farm had surveillance cameras, and a guard dog "roam[ed]" the property. The nearest cell phone tower was on Lonesome Dove Drive, less than one mile northeast of the farm. Appellant lived with his wife, Jasmine Murphy, in a residence about 14 miles northwest of the farm, near Radford University. Appellant's friend, Joseph Hopkins, lived about four miles south of appellant's residence. Appellant was born in Muncie, Indiana, and had at least one relative who resided there.

Around 2:59 a.m. on December 28, 2020, a security camera recorded an African-American man wearing a dark hoodie approach the property "from the East" carrying a "tarp" and speaking on a cell phone.[4] At 3:02 a.m., the man entered the warehouse by crawling beneath a "partially open[ed] garage door," which the farm owners had left open to allow the guard dog access to the warehouse. The man placed several boxes of hemp in the tarp. Around 3:06 a.m., the man exited the warehouse and carried the stolen boxes away in his tarp.

The Commonwealth introduced appellant's and Jasmine's cell phone records at trial, which showed that his cell phone called hers at 2:41 a.m. and 3:02 a.m. that night. Montgomery County Sheriff's Detective David Light testified at trial as an expert in cell phone data, mapping, and analysis that the phone calls "activated" the south side of the Lonesome Dove cell tower, which he opined indicated that appellant's phone was near the farm at the time of the burglary. Appellant's

---

[4] At trial, Montgomery County Sheriff's Detective David Light testified that although the timestamps on two of the surveillance cameras reflected that the perpetrator approached the farm at 2:54 a.m., the timestamps were "approximately four minutes ahead of actual Eastern Standard Time." The times referenced in this opinion account for that adjustment.

cell phone then traveled toward the area near his residence before moving northward to Muncie, Indiana. Appellant's cell phone returned to Virginia on January 1, 2021.

Around 1:08 a.m. on January 4, 2021, surveillance cameras again recorded an African-American man—wearing a dark hoodie, carrying a tarp, and speaking on a cell phone—approach the warehouse from the east. He entered the warehouse through the garage door, opened several boxes of hemp, and placed their contents in the tarp. Around 1:41 a.m., the man exited the warehouse and walked away, "dragging" the tarp containing the stolen property. Appellant's cell phone records showed that around 1:58 a.m., his cell phone called Jasmine's and activated the south side of the Lonesome Dove cell tower, which Detective Light opined was consistent with appellant's phone being near the farm around the time of the burglary. Appellant's cell phone then first traveled toward his residence—and then again to Muncie, Indiana. Appellant's cell phone returned to Virginia on January 9, 2021.

Around 1:59 a.m. on January 18, 2021, the farm's surveillance cameras—for a third time—recorded an African-American man in a dark hoodie approach the warehouse from the east carrying a tarp. He entered the warehouse through the garage door, opened several boxes of hemp, loaded their contents into the tarp, and dragged the tarp away. Appellant's cell phone records once more showed that his cell phone called Jasmine's at 1:48 a.m. and 2:56 a.m. and activated the south side of the Lonesome Dove cell tower. The cell data also showed that appellant's cell phone then traveled to Muncie, Indiana, for a third time, and returned to Virginia on January 22, 2021.

Following the first three burglaries, John Straw, the farm manager, had an alarm system installed that would trigger a "silent alarm" if the "perimeter doors" of the warehouse were opened. Around 1:08 a.m. on February 24, 2021, surveillance cameras captured an African-American man wearing a dark hoodie approach the warehouse from the same direction as before. The man broke into the warehouse using a "crowbar," opened several boxes of hemp, and began emptying their

contents into a tarp. Soon thereafter, sheriff's deputies arrived at the farm, responding to a silent alarm triggered during the break-in. Around 1:18 a.m., the man hurriedly exited the warehouse dragging an empty tarp. Deputies reviewed the surveillance video and notified police in the surrounding areas to search for a black male wearing a "red or orange" hoodie and "grey sweatpants."

Around 3:00 a.m., Deputy Christopher Thayer saw a man matching the perpetrator's description driving a utility task vehicle ("UTV") westward on a road about a half-mile south of the farm.[5] The deputy activated the emergency lights on his patrol car and attempted to stop the UTV, but it continued driving. Around 3:25 a.m., the driver abruptly turned onto the driveway of a residence, exited the UTV before it came to a complete stop, and ran into the woods.[6]

Appellant's cell phone records showed that at 4:07 a.m. on February 24, 2021, his cell phone "activated" the south side of the cell tower on Lonesome Dove Drive. At 4:15 a.m., appellant's phone sent Jasmine's phone a text message containing GPS coordinates of the area where Deputy Thayer saw the perpetrator flee into the woods. At 6:06 a.m., appellant's phone called Jasmine's and activated a cell tower near Joseph Hopkins's residence. Detective Light opined at trial that those circumstances demonstrated that appellant's phone was present in the area where the perpetrator fled after the burglary and then traveled toward Hopkins's residence.

When Detective Light arrived at the farm in response to the silent alarm, he found a Buick Enclave parked "behind some trees" about a half-mile east of the farm. Deputies searched the

---

[5] Police later determined that the UTV had been stolen that night from Michael Hammonds. Hammonds testified at trial that the UTV was worth $14,415, and he typically stored it in a shed on his property about two miles east of the farm, although his son had access to the shed and may have left the UTV outside before the theft.

[6] At trial, the Commonwealth introduced videos from a camera mounted on the dashboard of Deputy Thayer's patrol car depicting the suspect's flight during the attempted traffic stop.

Buick and found a pair of jeans containing appellant's driving permit, other personal documents bearing his name, and his wife's debit card. Michael Cole, the Buick's owner, told police that he was appellant's friend and had loaned him the vehicle on February 18, 2021.

Cole said that appellant called his phone twice on February 23, 2021, around 10:51 p.m. and 10:52 p.m.—hours before the final burglary—but he did not answer. The next morning, around 9:00 a.m., appellant called Cole and reported that the Buick "had been stolen the night before . . . while [appellant] was at a party in Radford." An hour later, appellant called Detective Light and claimed that he had been "drunk and passed out in Radford" when the burglary occurred, and "when he woke up he realized his car was stolen." At 11:03 a.m., after appellant finished speaking with Detective Light, appellant sent Cole a text message instructing him to "sell the car to split the money and give half to [appellant's] wife."

On February 25, 2021, deputies arrested appellant at Hopkins's residence in Radford, Virginia. Although uncertain of the precise time frame, Hopkins reported that appellant came to his house around 3:00 a.m. the previous day, "needing a place to stay." Hopkins gave deputies a pair of jeans that appellant had been wearing when he arrived; the jeans were muddy, had holes in the inner thighs, and were stained with appellant's blood. At the jail, physicians treated appellant for multiple "bug bites" on his inner thighs, which appeared "fresh" and matched the holes and blood stains on the jeans taken from Hopkins's residence. Police subsequently executed a search warrant for appellant's home and seized his and Jasmine's cell phones.

Straw reviewed the surveillance video from each of the burglaries and could not identify the perpetrator. Nevertheless, he opined that the perpetrator was likely someone "very familiar with the facility" because the man depicted in each video walked directly toward the "hemp storage area" and did not seem "surprised by the presence of a [guard] dog." Samuel Reichner, appellant's former co-worker on the farm, testified that some time before the incidents, appellant had asked him

the price of "a pound of flower" and how to acquire it and had also mentioned "getting some cannabis shipped in from out of state." In addition, Detective Light testified that appellant's cell phone recorded the number of steps appellant took each day. The cell phone data reflected that appellant walked several hundred yards during the times each burglary occurred, which Detective Light opined was significantly greater than appellant's typical daily movement.

At the conclusion of the Commonwealth's evidence, appellant moved to strike the charges, arguing that the evidence was insufficient to prove his identity as the perpetrator. The trial court denied the motion.

Following closing arguments at trial, the trial court provided the jury written instructions defining the charged offenses. Each instruction also delineated lesser-included offenses for each charged offense. When the jury returned their verdicts after deliberating, five of the verdict forms indicated that the jury found appellant guilty of both the charged offenses and the lesser-included offenses.

Realizing the error, the trial court informed the parties that it would instruct the jurors to amend their verdict forms because they could not convict appellant of charged offenses and lesser-included offenses. Appellant's counsel stated, "Your Honor, just note an objection for the record please." The trial court then instructed the jurors as indicated, and the jury convicted appellant of four charges of statutory burglary, three charges of grand larceny, and one charge each of attempted grand larceny and petit larceny (third or subsequent offense). This appeal followed.

ANALYSIS

I. Speedy Trial

A. Statutory Speedy Trial Claim

Appellant argues that the continuance of his trial date beyond September 27, 2021, which was five months after the district court found probable cause for his seven original charges,

violated his statutory speedy trial rights under Code § 19.2-243. "[A] statutory speedy trial challenge presents a mixed question of law and fact." *Young v. Commonwealth*, 297 Va. 443, 450 (2019). This Court "gives deference to the trial court's factual findings but reviews legal issues de novo." *Ali v. Commonwealth*, 75 Va. App. 16, 29 (2022).

If an adult defendant "is held continuously in custody" following a district court's finding of "probable cause to believe that [he] has committed a felony, the accused . . . shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date" of that finding. Code § 19.2-243. That five-month limitation, however, is "not absolute." *Young*, 297 Va. at 451. Code § 19.2-243 enumerates several exceptions to the time requirement for circumstances "beyond the control of a trial judge and the parties." *Schwartz v. Commonwealth*, 45 Va. App. 407, 426 (2005) (quoting *Baity v. Commonwealth*, 16 Va. App. 497, 502 (1993)). One such exception is when "failure to try the accused was caused . . . [b]y a natural disaster." Code § 19.2-243(7); *see* EDO of May 1, 2020.

In *Ali*, this Court considered Code § 19.2-243's "natural disaster" provision in the context of the COVID-19 pandemic. 75 Va. App. at 27. The defendant argued that the trial court violated his statutory speedy trial rights by delaying trial approximately 13 months under the Supreme Court's COVID-19 emergency orders. *Id.* at 29. Rejecting that argument, this Court held that the pandemic qualified as a "natural disaster" and the emergency orders validly tolled statutory speedy trial deadlines through the defendant's trial date. *Id.* at 27-33.

*Ali* is dispositive of appellant's argument. The Supreme Court declared a judicial emergency on March 16, 2020. *See* EDO of Mar. 16, 2020. The Supreme Court then extended the period of judicial emergency through the dates of appellant's jury trial on November 29 and 30, 2021. During that time, the Supreme Court's emergency orders tolled the running of any statutory speedy trial period. *Ali*, 74 Va. App. at 27-33.; *see also* EDO of Nov. 18, 2021

- 10 -

(ordering continued tolling of "speedy trial act deadlines"). Accordingly, the trial court did not abuse its discretion in denying appellant's motion to dismiss on statutory speedy trial grounds.

## B. Constitutional Speedy Trial Claim

Appellant further contends that the continuance of his trial date beyond September 27, 2021, violated his speedy trial rights under "the Sixth Amendment of the United States Constitution" and "Article 1, Section 8 of the Virginia Constitution." Relying on *Barker v. Wingo*, 407 U.S. 514 (1972), he asserts that the Commonwealth offered insufficient justifications for the continuance, which prejudiced him because he remained incarcerated during the delay and could not aid in preparing his defense. Appellant, however, did not preserve this argument for appellate review.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "A general argument or an abstract reference to the law is not sufficient to preserve an issue." *Banks v. Commonwealth*, 67 Va. App. 273, 285 (2017) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)). And appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards*, 41 Va. App. at 761 (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)). "Rule 5A:18 applies to bar even constitutional claims" not properly raised below. *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)).

Appellant did not sufficiently preserve his constitutional speedy trial argument for appellate review. Although appellant included a cursory reference to the Sixth Amendment in his written motion to dismiss, a "brief reference to [a] constitutional issue in [a] written motion [is] insufficient to preserve" a constitutional claim for appeal when the defendant never raised the issue during argument on the motion. *Howard v. Commonwealth*, 55 Va. App. 417, 425 (2009) (citing *Commonwealth v. Hilliard*, 270 Va. 42, 53 (2005)). In addition, appellant did not assert his speedy trial rights under the Virginia Constitution. Nor did he raise any constitutional claim during oral argument at the hearing on his motion to dismiss. Therefore, appellant's constitutional speedy trial claims are waived. *See id.* Appellant does not invoke the good cause or ends of justice exceptions to Rule 5A:18 in his brief, and this Court will not do so sua sponte. *Edwards*, 41 Va. App. at 761.

## II. Voir Dire

Appellant also contends that the trial court erred in refusing to strike the remaining jurors for cause because they "heard everything [the struck juror] had to say" and "may have placed weight" on her comments, despite the court's instruction regarding the presumption of innocence and burden of proof. Appellant asserts that the struck juror's comments were prejudicial and their potential influence on the remaining jurors deprived him of his constitutional right to a fair and impartial jury.

Again, objections must be "both specific and timely," *Bethea*, 297 Va. at 743 (quoting *Dickerson*, 58 Va. App. at 356), rather than "general" or "abstract," *Banks*, 67 Va. App. at 285 (quoting *Edwards*, 41 Va. App. at 760). Moreover, it is the appellant's "burden to obtain a clear ruling from the trial court" on his timely, specific objection. *Young v. Commonwealth*, 70 Va. App. 646, 657 (2019). Otherwise, "there is no ruling for [the appellate court] to review." *Id.* (quoting *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010)).

Here, appellant made only a vague, "general argument" at trial that he "had a motion" for the remaining jurors because they overheard the struck juror's explanation. That allegation was

insufficient to preserve the specific argument appellant now raises on appeal—that the trial court erred in refusing to strike the jurors for cause because the struck juror's comments were prejudicial and potentially impaired the remaining jurors' impartiality. *See Banks*, 67 Va. App. at 285. Furthermore, after the trial court questioned the remaining jurors and instructed them on the law, appellant failed to "obtain a clear ruling from the trial court" regarding his motion. *Young*, 70 Va. App. at 657. Consequently, "there is no ruling for [this Court] to review." *Id.* (quoting *Williams*, 57 Va. App. at 347). Appellant does not invoke any exception to Rule 5A:18, and this Court will not do so sua sponte. *Edwards*, 41 Va. App. at 761.

### III. Sufficiency

When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Appellant argues that the evidence was insufficient to prove his identity as the perpetrator of the offenses. He emphasizes that although "[c]ell phone data placed [him] in the proximity of the

closest cell phone tower to the location" of the offenses at the time of their commission, the data "could not pinpoint his location." Appellant asserts, therefore, that the evidence established only his "proximity and opportunity to [commit] the crime[s]," which is insufficient to prove criminal agency. This Court disagrees.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). As with any element of an offense, identity may be proved by direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

"Circumstantial evidence is not viewed in isolation." *Id.* (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Pijor v. Commonwealth*, 294 Va. 502, 512-13 (2017) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Moreover, "[b]y finding the defendant guilty, . . . the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *James v. Commonwealth*, 53 Va. App. 671, 681 (2009) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). That conclusion "is itself a 'question of fact,' subject to deferential appellate review." *Id.*

Here, appellant's cell phone records and other circumstantial evidence established his presence during the commission of the crimes, and the distinct similarities in the execution of the crimes established that the same person perpetrated each crime. Accordingly, the jury could

reasonably infer that appellant committed each of the offenses as part of a "common scheme" to steal hemp from his former employer and transport it to Indiana for resale. *See Cousett v. Commonwealth*, 71 Va. App. 49, 58 (2019) (defining a "common scheme" as a series of "crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes").

To begin, appellant's cell phone records established that his phone was near the farm and communicated with his wife's phone around the specific hours of the offenses. *See Edwards v. Commonwealth*, 68 Va. App. 284, 299 (2017) (holding cell tower location data established the defendant's presence at crime scene at the time of victim's murder and proved his opportunity to commit the crime). Moreover, after each of the first three burglaries, appellant's cell phone moved toward the vicinity of his residence before traveling to Muncie, Indiana, where he had been born and had at least one relative. Immediately after the February 24 burglary, appellant's cell phone was near the farm and texted his wife's phone GPS coordinates of the area where Deputy Thayer saw the suspect flee into the woods about 30 minutes prior. Appellant's phone then traveled to the area of Hopkins's residence, where police arrested appellant the next day.

Appellant had injuries on his inner thigh that were consistent with the holes in the bloody, mud-stained jeans he had been wearing when he arrived at Hopkins's home after the February 24 burglary. Police also found the Buick appellant had borrowed from Cole parked about a half-mile from the farm, in the direction from which the burglar approached the farm on foot. The Buick was concealed "behind some trees" and contained another pair of appellant's jeans, which had his personal documents and his wife's debit card inside. Appellant's cell phone data also established he traveled long distances around the times of each burglary, which was consistent with the perpetrator's pattern of carrying the stolen property on foot and his flight from police after the

- 15 -

February 24 burglary. From the above evidence, a rational factfinder could conclude that appellant was present during the commission of each of the offenses and had the opportunity to commit them.

Second, each of the incidents shared "idiosyncratic features" that "permit[ed] an inference" that appellant committed "each individual offense . . . as part of a pattern of" burglaries and thefts. *Brooks v. Commonwealth*, 73 Va. App. 133, 144 (2021) (quoting *Severance v. Commonwealth*, 67 Va. App. 629, 645 (2017)). During each incident, surveillance cameras recorded a person who investigators believed was an African-American man wearing a dark hoodie approaching the farm from the east. Each time, the man moved directly toward the storage warehouse, entered it, and placed boxes of hemp or their contents into a tarp, which he then carried away or attempted to do so. Straw testified at trial that he reviewed the surveillance videos depicting each theft and opined that the perpetrator was likely someone "very familiar" with the farm because he moved directly to the storage warehouse and seemed unsurprised by the guard dog. Before the thefts, appellant had worked at the farm and asked his co-worker about the price of a pound of hemp and discussed receiving a shipment of cannabis from out-of-state. From the above evidence, a rational factfinder could conclude that appellant committed each of the offenses as part of a common scheme to steal hemp and transport it to Muncie, Indiana, for resale. *Cf. Brooks*, 73 Va. App. at 133-45 (holding evidence established a common scheme where six times during a four-month period tires and rims were stolen from trucks parked overnight in driveways, GPS location data established that the defendant's truck was present during the commission of each theft, and police found business cards advertising the defendant's tire resale business inside his apartment and storage unit).

Although appellant denied involvement in the offenses and claimed that he was "passed out" in Radford during the February 24 burglary, the balance of the evidence contradicted appellant's claims. Indeed, the jury was entitled to discount appellant's self-serving denials and alternative explanation as "l[ies] to 'conceal his guilt,' and could treat such prevarications as

'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (first quoting *Haskins*, 44 Va. App. at 10; and then quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).

In sum, appellant's cell phone records and other circumstantial evidence established that he was present during the commission of each of the offenses, which shared idiosyncratic features demonstrating that appellant committed the crimes as part of a "common scheme" to steal and transport hemp to Indiana for resale. Thus, the evidence established more than appellant's mere "opportunity" to commit the crimes and was sufficient to prove his identity at the perpetrator.

## IV. Jury Instructions

Finally, appellant argues that the trial court erred in instructing the jurors to amend their verdict forms because "once the jury returns their verdict, whether confused or clear-headed, the trial [j]udge cannot make substantive changes, but may only correct mistakes." He asserts that by so instructing the jury, the trial court improperly "substantively chang[ed] which crimes [appellant] was ultimately to be found guilty of."

But appellant did not raise that specific argument before the trial court. He merely asked the court to note his objection for the record—with no accompanying reason. Because appellant raised only a general objection, he did not preserve his more specific argument for appeal. *See Edwards*, 41 Va. App. at 760-61; *Bethea*, 297 Va. at 743 (holding that objections "must be both *specific* and *timely*—so that the trial judge would know the particular point being made"). Appellant does not invoke any exception to Rule 5A:18, and this Court will not do so sua sponte. *Edwards*, 41 Va. App. at 761.

## CONCLUSION

For the above reasons, this Court affirms the trial court's judgment.

*Affirmed.*